## PLUMLEY v KLEIN

### Opinion of the Court

1. Automobiles—Minors—Guest Passengers—Guest Passenger
Act—Death.

> A child under the age of seven years does not have the ability to
> choose to be a guest passenger; therefore, the guest passenger
> act is not applicable in a case under the wrongful death act
> where all of the children who were passengers in a vehicle
> involved in an accident were under seven years of age (MCLA
> 257.401; 600.2922).

2. Parent and Child—Torts—Negligence—Prospective Applica-
tion.

> A child may maintain a lawsuit against his parent for injuries
> suffered as a result of the alleged ordinary negligence of the
> parent except (1) where the alleged negligent act involves an
> exercise of reasonable parental authority over the child; and (2)
> where the alleged negligent act involves an exercise of reasona-
> ble parental discretion with respect to the provision of food,
> clothing, housing, medical and dental services, and other care;
> this new rule applies only to the instant case, and to all
> pending and future cases.

### Dissenting Opinion

### Black, J.

3. Automobiles—Insurance—Liability Insurance—Death—Wrong-
ful Death—Statutes.

> *A section of the Insurance Code denies all right of original suit*
> *against a defendant's liability insurer in an action brought by*
> *an injured person or in a wrongful death action, the statute*

---

* Continued from Volume 387 Mich.

References for Points in Headnotes
[1] 8 Am Jur 2d, Automobile and Highway Traffic § 471 *et seq.*
[2, 4, 5, 7] 59 Am Jur 2d, Parent and Child § 151 *et seq.*
[3] 7 Am Jur 2d, Automobile and Highway Traffic § 350.
[6] 7 Am Jur 2d, Automobile and Highway Traffic § 216 *et seq.*

under which wrongful death actions may be brought does not condition the imposed liability, of one guilty of having caused death by wrongful act, neglect or default, upon the presence of liability or other corresponding insurance and the wrongdoer's liability is absolute; therefore, the Michigan Supreme Court must assume that the owner of the motor vehicle of death has no, or insufficient, liability insurance for it cannot rely upon the continued solvency of an insurer or upon the specific applicability of any insurance policy where, in an action under the wrongful death act, there is nothing of record that the owner of the motor vehicle of death purchased and maintained automobile liability insurance or, if so, whether the same is sufficient in amount to satisfy any judgment in favor of a defendant who filed a cross-claim for damages and to satisfy any judgment in favor of the plaintiff (MCLA 500.3030, 600.2922).

4. PARENT AND CHILD—TORTS—PARENTAL IMMUNITY—COMMON LAW—AUTOMOBILES— INSURANCE.

There is as much need of the common-law rule that a minor cannot sue his parent for tort as there ever was despite the argument that this rule should be modified to allow minors to recover against a parent for damages caused by the negligent driving of the parent's automobile for the reason that modern business methods have so changed with the coming of the automobile and the insurance thereon inasmuch as insurance companies promise to reimburse the insured for any judgment against him for injuries caused by the automobile.

DISSENTING OPINION

T. E. BRENNAN, J.

5. PARENT AND CHILD—COMMON LAW—TORTS—PARENTAL IMMUNITY—PUBLIC POLICY.

A rule of the common law was that a minor could not sue his father in tort; the rule had its beginning in the interest of the peace of the family and of society, and is supported by sound public policy.

6. INSURANCE—TRIAL—DEATH—STATUTES.

Joining the insurance carrier in a wrongful death action or referring to insurance during the trial is prohibited by statute (MCLA 500.3030).

7. APPEAL AND ERROR—PROSPECTIVE APPLICATION—INTRA-FAMILY LIA-
BILITY— INSURANCE.

> *Holding that a new rule of intra-family liability in tort cases
> applies only to the instant case, and to all pending future cases,
> does not make the ruling prospective at all; the only possible
> conclusion is that the Michigan Supreme Court is requiring
> insurance companies to start paying intra-family damages right
> away, leaving them to make up their losses out of future
> premiums.*

Appeal from Court of Appeals, Division 3, T. M.
Burns, P. J., and R. B. Burns and Munro, JJ.,
reversing Van Buren, David Anderson, Jr., J. Sub-
mitted January 6, 1972. (No. 10 January Term
1972, Docket No. 53,299.) Decided July 26, 1972.

31 Mich App 26 affirmed.

Complaint by Howard Plumley, administrator of
the estates of Nita Plumley, Virginia Lee Plumley,
Melissa Kay Plumley, and Howard Everett Plum-
ley, all deceased, against Alma Klein, administra-
trix of the estate of Claudia Ann Plumley, de-
ceased, for wrongful deaths caused by a motor
vehicle collision. Summary judgment for defend-
ant. Plaintiff appealed to the Court of Appeals.
Reversed and remanded for trial. Defendant ap-
peals. Affirmed and remanded.

*Marcus, McCroskey, Libner, Reamon & Williams*
(by *Robert J. VanLeuven),* for plaintiff.

*Troff, Lilly, Piatt, File & Doyle,* for defendant.

WILLIAMS, J. The principal issue of law pre-
sented in this case is whether the personal repre-
sentative of deceased children may recover dam-
ages from the personal representative of the de-
ceased mother under the wrongful death act

(MCLA 600.2922; MSA 27A.2922) for ordinary negligence.

On May 22, 1969, Mrs. Claudia Ann Plumley was driving her husband's pickup truck on Highway M-40 in Van Buren County. In the truck with Mrs. Plumley as passengers were her children Nita, six years old, Virginia Lee, four years old, Melissa Kay, not quite two years old, and Howard Everett, ten months old. The vehicle driven by Mrs. Plumley collided with another pickup truck driven by Mr. David William Rumery. As a result of that collision Mrs. Plumley and her four children were killed.

Mr. Howard Plumley, husband and father of the deceased Mrs. Plumley and her children, filed a wrongful death action as personal representative of his deceased children against the personal representative of his deceased wife. The suit also named as defendants Mr. Rumery and Superior Market, the owner of the truck driven by Mr. Rumery. The complaint in this suit alleged that the four children were killed as a result of the negligence of both Mrs. Plumley and Mr. Rumery.

Defendant Alma Klein, administratrix of the estate of Claudia Ann Plumley, moved for summary judgment on the basis that as mother of the children the deceased Mrs. Plumley was immune from suit. The trial court granted the defendant Klein's motion for summary judgment.

The Court of Appeals reversed the decision of the trial court in 31 Mich App 26 (1971). The Court of Appeals interpreted the legal logic of *Mosier v Carney,* 376 Mich 532 (1965) (hereinafter discussed) to apply in this case and held there was no reason for the continuation of intra-family immunity where the parties involved are deceased, 31 Mich App 26, 30. We granted the defendant

Klein's application for leave to appeal on July 20, 1971.

The guest passenger act is not applicable to this case as all of the deceased children were under seven years of age at the time of the accident. This Court held in *Burhans v Witbeck,* 375 Mich 253 (1965) that a child under the age of seven years does not have the ability to choose to be a guest passenger.

This Court determined in *Elias v Collins,* 237 Mich 175, 177 (1926)[1] that:

"It is a rule of the common law that a minor cannot sue his father in tort. The rule had its beginning in the interest of the peace of the family and of society, and is supported by sound public policy."

A number of our sister states who once recognized the above rule have since abandoned it.[2]

---

[1] Prior to 1891 there had been no English cases, one Scottish case and three American cases considering tort liability of parents to children. All four cases allowed liability. 19 ALR2d 423, 425. Chief Justice Peaslee, in *Dunlap v Dunlap,* 84 NH 352, 354; 150 A 905, 906; 71 ALR 1055, 1058 (1930), said that there "never has been a common-law rule that a child could not sue its parent". In 1891 *Hewlett v George,* 68 Miss 703; 9 So 885; 13 LRA 682, held that an unemancipated child could not sue her mother for false imprisonment on the basis that it was against the peace of society and family peace to allow such suits. Subsequently most of the courts of this country followed this precedent. 19 ALR2d 423, 425–426. See *Elias v Collins,* 237 Mich 175, 177 (1926).

[2] See *Goller v White,* 20 Wis 2d 402; 122 NW2d 193 (1963); *Brennecke v Kilpatrick,* 336 SW2d 68 (Mo, 1960); *Briere v Briere,* 107 NH 432; 224 A2d 588 (1966); *Hebel v Hebel,* 435 P2d 8 (Alas, 1967); *Nuelle v Wells,* 154 NW2d 364 (ND, 1967); *Silesky v Kelman,* 281 Minn 431; 161 NW2d 631 (1968); *Gelbman v Gelbman,* 23 NY2d 434; 297 NYS2d 529 (1969); also, *France v APA Transport Corp,* 56 NJ 500; 267 A2d 490 (1970); *Thurman v Etherton,* 459 SW2d 402 (Ky, 1970); *Streenz v Streenz,* 106 Ariz 86; 471 P2d 282 (1970); *Gibson v Gibson,* 3 Cal 3d 914; 92 Cal Rptr 288; 479 P2d 648 (1971); *Falco v Pados,* 444 Pa 372; 282 A2d 351 (1971); and *Smith v Kauffman,* 212 Va 181; 183 SE2d 190 (1971). In all of these cases the rule of parent-child tort immunity is abrogated in varying degrees. They illustrate that the modern trend is definitely toward the elimination of such immunity.

Instead, they now recognize the right of a child to recover damages for injuries incurred as a result of negligent conduct on the part of his parent. As set out in footnote 2, the number of recent decisions in other states clearly indicates that the modern trend is towards the elimination of intra-family immunity. As Prosser has stated:

"Finally, in 1963, Wisconsin took the lead in declaring that the parent-child immunity was abrogated entirely in that jurisdiction, except as to exercises of parental control and authority, or parental discretion with respect to such matters as food and care. The decision set off something of a long overdue landslide; and at the present writing it has been followed in Alaska, Arizona, California, Hawaii, Illinois, Kentucky, Louisiana, Minnesota, New Hampshire, New Jersey, New York, and North Dakota. The prediction is easy to make that the number of such jurisdictions will henceforth be rapidly on the increase."[3]

This Court has itself moved toward an elimination of intra-family immunities. In *Mosier v Carney,* 376 Mich 532, 566 (1965)[4] Justice SOURIS stated that:

"We this day hold: (1) that a suit may be maintained predicated upon injuries to one spouse during marriage arising out of an allegedly wrongful act of the marital partner, when the allegedly wrongful act resulted in termination of the marriage by death; * * * ."

The action in that case was by the personal representative of a deceased spouse killed as a result of

---

[3] Prosser, Torts (4 ed), § 122, pp 867–868.

[4] Applying the analogous reasoning of *Mosier* the Federal District Court for the Western District of Michigan held in *Brinks v Chesapeake & O R Co,* 295 F Supp 1318 (WD Mich, 1969), that the doctrine of parental tort immunity no longer applied in Michigan in cases where both the parent and child are deceased as a result of the alleged tortious conduct.

the alleged gross negligence of the other spouse. The beneficiaries in *Mosier* were the children of the deceased spouse.

The Legislature also has moved toward an elimination of intra-family immunities. In *Hosko v Hosko,* 385 Mich 39, 44–45 (1971), we stated:

"It must be concluded that the Revised Judicature Act of 1961 has abrogated the doctrine of interspousal immunity insofar as women are concerned and that the action in this case is maintainable by plaintiff. Conversely, in a suit brought by a husband against a wife, the action would also be maintainable in accordance with the clear language of the statute."

Incidentally a special but subsidiary point may be noted. As the Supreme Courts of our sister states Wisconsin and Minnesota have noted,[5] the widespread utilization of liability insurance suggested that intra-family lawsuits would seldom upset the tranquility of the family. Writing for the Wisconsin Supreme Court, Justice Currie stated:

"Nevertheless, we consider the wide prevalence of liability insurance in personal-injury actions a proper element to be considered in making the policy decision of whether to abrogate parental immunity in negligence actions. This is because in a great majority of such actions, where such immunity has been abolished, the existence of insurance tends to negate any possible disruption of family harmony and discipline." *Goller v White,* 20 Wis 2d 402, 412; 122 NW2d 193, 197 (1963).

Instead, an injured family member will merely be able to recover from an insurance company for

---

[5] *Goller v White,* 20 Wis 2d 402, 412; 122 NW2d 193, 197 (1963); *Silesky v Kelman,* 281 Minn 431, 438–439; 161 NW2d 631, 636 (1968). See also *Gibson v Gibson,* 3 Cal 3d 914, 919; 92 Cal Rptr 288, 291; 479 P2d 648, 653 (1971).

injuries against which the company has been paid to insure.

We are persuaded that the modern rule[6] best serves the interests of justice and fairness to all concerned. The case of *Elias v Collins, supra,* which provides for intra-family tort immunity is overruled. A child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent. Like our sister states,[7] however, we note two exceptions to this new rule of law: (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

We recognize that this new rule represents a final departure from *Elias v Collins, supra.* Therefore in the interests of justice and fairness, we hold that the new rule applies only to the instant case, and to all pending and future cases. We have followed this same course before when adopting a new rule of law.[8]

The decision of the Court of Appeals is affirmed. The cause is remanded for future proceedings in conformity with this opinion. No costs, a question of general public importance being involved.

T. M. KAVANAGH, C. J., and ADAMS, T. G. KAVANAGH, and SWAINSON, JJ., concurred with WILLIAMS, J.

---

[6] Incidentally, as noted in footnote 1, we believe that what we have called the modern rule is also the original common-law rule.

[7] *Goller v White, supra; Silesky v Kelman, supra.*

[8] *Womack v Buchhorn,* 384 Mich 718 (1971); *Daley v LaCroix,* 384 Mich 4 (1970); *Parker v Port Huron Hospital,* 361 Mich 1, 28 (1960); and *Bricker v Green,* 313 Mich 218 (1946).

BLACK, J. *(dissenting).* The Court has chosen this sleaziest conceivable of pleaded causes as opportune for nullification of *Elias v Collins,* 237 Mich 175 (1926). More of *Elias,* later.

With judicial tenure voluntarily limited to a few months, I at first was inclined by the philosophy of futility to "go along" (by concurrence in the ordered result) with this latest of a steady line of exuberant overrulements of settled tort-law decisions a once revered Court has handed down. There was yet another reason, admittedly cynical, for toleration from here on of more such defenseless predispositions. When the trial profession in particular is forced to endure progressive judicial destruction of the "rule of law" in our state, the members thereof may observe resignedly that such doings *moderne* do after all mean more rather than less law business. Whether this is in the public interest, apart from the interests of campaign contributors and political supporters, and whether it consists with the sworn duty of a Court of final resort, is something else. At any rate I cannot hold still before this latest judicial monster. Among other fatuities it will license one, proceeding under the wrongful death statute as sole beneficiary of the cause alleged, to obtain a judgment he himself is legally liable to satisfy.

From here on I will proceed on assumption that this plaintiff, owner of the motor vehicle of death, has no—or insufficient—liability insurance.[1]

Such is an assumption we must indulge unless,

---

[1] There is nothing of record disclosing (see GCR 1963, 310.1) that Mr. Plumley purchased and maintained automobile liability insurance or, if so, whether same is sufficient in amount (a) to satisfy any judgment rendered in favor of cross-claiming defendant Rumery, and (b) to satisfy any judgment that might be rendered in Mr. Plumley's favor against his deceased wife's personal representative. We must keep in mind that Mr. Plumley, the registered and actual owner of the motor vehicle his wife was driving at the time of tragedy, would

of course, our majority is willing to say right out that *Elias* will continue to apply where the defendant has no liability insurance. That may indeed be the Court's intent, for I find below its quotation of *Goller v White,* 20 Wis 2d 402; 122 NW2d 193 (1963), this concluding sentence *(ante* p 15):

"Instead, an injured family member will merely be able to recover from an insurance company for injuries against which the company has been paid to insure."

It is an assumption we must abide in view of section 3030 of The Insurance Code of 1956 (MCLA 500.3030; MSA 24.13030) (discussed post); a statute which since 1929 has denied all right of original suit against the defendant's liability insurer.

It is an assumption we must employ upon review of every action for wrongful death, for the statute under which such actions may be brought does not condition the imposed liability, of one guilty of having caused death (by "wrongful act, neglect or default"), upon the presence of liability or other corresponding insurance (MCLA 600.2922; MSA 27A.2922). The wrongdoer's liability is absolute.

It is an assumption we must apply at all hazard, for judges writing law applicable to a class of actions (here for intrafamilial torts) cannot rely upon the continued solvency of an insurer or,

be legally liable to satisfy both such judgments—if entered and permitted to stand— insurance or no insurance (MCLA 257.401; MSA 9.2101). Section 257.401 reads, explicitly and pertinently as it has since 1915:

"Sec. 401. * * * The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in such operation as the rules of the common law requires. * * * "

indeed, upon the specific applicability of any insurance policy.[2]

Regrettably, this pleaded cause was tried and decided in circuit solely upon motion for summary judgment. Now let us examine it in the light of the pleaded facts and application thereof to our own statutory law, rather than that of other states.

The plaintiff, Howard Plumley, was outright owner of the motor vehicle his wife was driving when it collided head on with another motor vehicle driven by another defendant, David William Rumery. Mr. Plumley charges that wife with guilt of negligence which caused or contributed in causing the death of all four minor children born to him and his said wife.[3] He also charges Mr. Rumery (and the owner of the motor vehicle driven by Rumery) with acts of alleged causal negligence corresponding with those charged by him against his wife. Under the wrongful death statute he "seeks judgment against defendants, jointly and severally", in the sum of $54,000.

Mr. Rumery filed a cross-claim against the defendant personal representative of Mrs. Plumley, alleging that she was causally and exclusively negligent and that he, by the collision, suffered severe personal injuries to his damage in the sum of $70,000. That cross-claim remains for trial, undisturbed by what we do here.

Portrayed thus is the case selected for overruling of *Elias,* with the Court left blind as to the fact if it be a fact that plaintiff purchased and maintained liability insurance sufficient to cover all he

[2] For an instance of this last, see recent *Federoff v Ewing,* 386 Mich 474 (1971).

[3] Strangely, he does not charge his wife with having actionably destroyed, by her death, his right to continued conjugal consortium and companionship.

says he is entitled to collect, plus the amount Mr. Rumery says he is entitled to collect from the same source.

Now consider majority reliance upon *Goller v White,* 20 Wis 2d 402; 122 NW2d 193 (1963) and *Silesky v Kelman,* 281 Minn 431; 161 NW2d 631 (1968), the latter quoting and relying upon *Goller.* Our majority *(ante* p 7 ) quotes only the final sentence of that paragraph of *Goller* which tells *Goller's* story of present concern. I quote the whole paragraph, the one that follows reference by the Wisconsin Supreme Court to the origin of this "let 'em sue if there is insurance" idea *(Goller 411– 412):*

"This court, however, has refused to consider the existence of liability insurance a sufficient basis for departing from the rule of *Wick v Wick, supra* [192 Wis 260; 212 NW 787; 52 ALR 1113 (1927)]. *Lasecki v Kabara* (1940), 235 Wis 645, 294 NW 33, 130 ALR 883; and see also *Fidelity Savings Bank v Aulik* (1948), 252 Wis 602, 32 NW2d 613. This accords with many decisions from other states that the mere fact that the particular defendant-parent is protected by liability insurance does not enable his minor child to maintain an action when, in the absence of such insurance, he could not otherwise maintain it. Anno. 19 ALR2d 423, 435–436. Nevertheless, we consider the wide prevalence of liability insurance in personal injury actions a proper element to be considered in making the policy decision of whether to abrogate parental immunity in negligence actions. This is because in a great majority of such actions, where such immunity has been abolished, the existence of insurance tends to negate any possible disruption of family harmony and discipline."

*Goller* of course comes from a state which by statute permits direct suit against the defendant's liability insurer (Farmers Mutual Automobile Insurance Company in *Goller);* whereas in Michigan

that is disallowed precisely (MCLA 500.3030; MSA 24.13030). The pertinent idea advanced in *Goller* and pursued by *Silesky* came from 1 Harper and James, Law of Torts, p 650, § 8.11, pointing out "one situation in which family harmony is not thereby disturbed arises where there is liability insurance coverage."

Neither case goes so far as to hold that the presence of liability insurance, by itself, will or should permit the maintenance of tort actions by children against their parents. Each stops by saying that the prevalence of liability insurance in personal injury actions is a proper element *to be considered* in determining whether to overrule as advocated. I therefore do "consider" it, just as this Court did in *Elias v Collins.* I do more, desiring to make sure before going a step farther that there is not just that "prevalence", but also that liability insurance with clear sufficiency thereof exists for the case at hand.

In a word, it is suggested by way of a polite challenge that if the Court is determined to go ahead willy-nilly, the Justices ought first to say that son now may sue father, and daughter now may sue mother, only if the defendant parent is actually and adequately insured against such newly installed liability, and then only to the monetary amount thereof. Otherwise, what happens to the argument that actions of such nature are not "disruptive of family harmony"?

*Elias* is as good law today as when written. It tells us, after having quoted and considered then extant authorities (pp 178–179):

"Plaintiff's counsel recognize this as a rule of the common law, but they argue that modern business methods have so changed with the coming of the automobile and the insurance thereon that the common-law

rule should be modified to allow minors to recover against their father for torts, inasmuch as insurance companies promise to reimburse the insured for any judgment gotten against him for injuries caused by the automobile. Perhaps there is a spice of good sense in this, but, if the rule is to fade away because the reason is gone for its existence, what will we say as to boys who are injured while working on farms or in industrial plants, by reason of the negligence of their fathers? In these cases there is as much need of the common-law rule as there ever was."

I ask the same question: If the rule is to be discarded on account of the ascertained or assumed presence of liability insurance covering motor vehicles, what are we to tell that great horde of newly suable but non-insured fathers and mothers who, quite aside from liability arising from traffic accidents, cause negligent injury to their children? As in *Elias,* "In these cases there is as much need of the common-law rule as there ever was."

I stand by *Elias* and therefore vote to reverse and remand for entry of judgment upholding the judgment of the circuit court.

T. E. Brennan, J. *(dissenting).* The rule of law in Michigan, until today, at least, is correctly stated by the majority:

"This Court determined in *Elias v Collins,* 237 Mich 175, 177 (1926) that: ·
" 'It is a rule of the common law that a minor cannot sue his father in tort. The rule had its beginning in the interest of the peace of the family and of society, and is supported by sound public policy.' "

The majority undertakes to overrule *Elias v Collins.*

Its reason is that the parent-defendant is in-

sured against such liability. Again, from the majority opinion:

"As the Supreme Courts of our sister states Wisconsin and Minnesota have noted, the widespread utilization of liability insurance suggested that intra-family lawsuits would seldom upset the tranquility of the family. Writing for the Wisconsin Supreme Court, Justice Currie stated:

" 'Nevertheless, we consider the wide prevalence of liability insurance in personal-injury actions a proper element to be considered in making the policy decision of whether to abrogate parental immunity in negligence actions. This is because in a great majority of such actions, where such immunity has been abolished, the existence of insurance tends to negate any possible disruption of family harmony and discipline.' *Goller v White,* 20 Wis 2d 402, 412; 122 NW2d 193, 197 (1963). Instead, an injured family member will merely be able to recover from an insurance company for injuries against which the company has been paid to insure."

In the first place, we have no way of knowing whether there is or is not insurance in this case. The statute prohibits joining the insurance carrier in the action or referring to insurance during the trial. (MCLA 500.3030; MSA 24.13030.)

A layman might assume that Mrs. Plumley was insured from the fact that her husband is suing her estate on behalf of her children. But there is no legal inference permitted.

But granting, *arguendo,* that the deceased defendant was insured against public liability, it does not follow that the insurance company " * * * has been paid to insure" against the risk of the liability the majority would impose.

Since Michigan insurers have no experience with intra-familial liability, they have had no basis upon which to charge premiums for it.

Of course, future premiums will have to go up.

The majority seems to recognize that fact, and it concludes with a very curious holding:

"We recognize that this new rule represents a final departure from *Elias v Collins, supra.* Therefore in the interests of justice and fairness, we hold that the new rule applies only to the instant case, and to all pending and future cases."

This language is completely illusory. It is designed to give the reader the impression that the overruling of intra-familial immunity is prospective only, thus giving the insurance companies a chance to stay ahead by increasing their premiums to cover this new risk.

Of course, the quoted language does not make the ruling prospective at all.

There are only three kinds of cases, in point of time; past cases, pending cases and future cases. The only cases not mentioned are the past cases— a passing tribute to the rule of *res judicata,* or at least an acknowledgment that the dockets of Michigan could not tolerate a blanket reversal.

There is no basis in logic to interpret "future cases" as meaning "cases arising out of future accidents". The adjectives *pending* and *future* both modify the noun *cases.* Certainly, there are no pending accidents, and it would be absurd to conclude that the word *pending* refers to cases and the word *future* refers to accidents. Additionally, such an interpretation would divide past accidents into two groups, those on which there are pending cases and those on which there are no pending cases. Such a capricious classification seems unlikely in view of this Court's sensitivity to the demands of equal protection of the laws.

Indeed, the only possible conclusion is that the Court is requiring insurance companies to start

paying intra-family damages right away, leaving them to make up their losses out of future premiums.

Of course, nowhere has the Court bothered to mention intra-family suits in which there is no insurance. The public policy which supported *Elias v Collins* would still apply in such cases.

I suppose the majority has concluded that a little tampering with family tranquillity is not too great a price to pay for the great benefaction of friendly intramural lawsuits at the expense of the premium-paying public.

I cannot help but marvel at the hue and cry of Bench and Bar over the current push for no-fault insurance.

Where in heaven's name do they think the impetus for no-fault comes from, if not from cases like this.

In truth, and as this case clearly demonstrates, no-fault *liability* is already a fact of Michigan jurisprudence. Does anyone really suppose that Howard Plumley blames his wife for the death of his children? Or that he sees this lawsuit as a means of affixing responsibility upon her for the tragedy which has befallen him?

Indeed it must be presumed that he honors the memory of the woman who was his wife and the mother of his children.

And that this suit is in actuality a no-fault case, in which the allegations and proofs of negligence are not advanced to affix fault, blame or responsibility, but are tendered merely to satisfy the hypocritical fiction that this is a traditional action in tort.

Many members of the Bar, I think correctly, oppose any system of automobile injury compensa-

tion which limits recoveries to fixed dollar amounts.

But how can we justify opposition to a no-fault insurance system when we have already permitted or abetted the creation of a no-fault system of liability through cases such as the one at bar?