(No. 49168.–

FLORA TANARI, Appellant, v. SCHOOL DIRECTORS OF DISTRICT NO. 502, COUNTY OF BUREAU, Appellee.

*Opinion filed November 30, 1977.*

Louis E. Olivero, of Peru, for appellant.

Berry & O'Conor, of Ottawa, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Flora Tanari, brought an action in the circuit court of Bureau County against the defendant, School Directors of District No. 502, seeking damages for injuries she sustained when she allegedly was knocked to the ground by a group of children engaged in horseplay at a high school football game sponsored by defendant on its premises. The complaint alleged ordinary negligence on the part of defendant in failing to provide adequate supervision and control of children at the game. At the close of the evidence, the trial court granted the defendant's motion for a directed verdict on the ground that plaintiff was a licensee on defendant's premises; that defendant therefore only owed her the duty to refrain from wilful and wanton misconduct; and that breach of such duty had neither been alleged nor proved at trial. Plaintiff's motion to amend her complaint to add a wilful and wanton count was denied on the ground that the amendment would not conform with the proof. The appellate court affirmed (43 Ill. App. 3d 331), and we allowed plaintiff's petition for leave to appeal.

Plaintiff, age 64, was employed as a bus driver by an individual who had a contract with the defendant school district to transport students to and from school. She had been so employed for 27 years and had attended all of the local high school football games for the last 25 years. On October 13, 1972, plaintiff attended the Hall Township

High School homecoming football game with her daughter, son-in-law and grandchildren. The game was held on defendant's premises at a sports stadium under defendant's supervision and control. Plaintiff entered the stadium using a complimentary season pass issued by the defendant. As she was walking toward her seat, she noticed a crowd of boys and girls playing near the northwest end of the stadium, and the next thing she knew she had been knocked to the ground by a "big" boy who fell on top of her. The boy, who was never identified, got up, apologized and hurried away. Plaintiff experienced immediate pain in her foot and subsequently received medical treatment for the injury, which was diagnosed as a fracture of the third, fourth and fifth metatarsals. As a consequence of the injury, she was unable to work for a period of six weeks, and at the time of the trial, over two years after the incident, she still suffered occasional pain and swelling in her right foot.

Plaintiff's son-in-law testified that they had just entered the northwest stadium gate and were walking toward their seats through a grassy area behind the stands, when "there was a tremendous commotion between, it appeared to be kids milling around, jostling, pushing, and generally raising Cain. And she was knocked down by someone in this group and she hurt her foot and her ankle." On cross-examination, he testified that he did not know the boy who had knocked his mother-in-law to the ground, and did not know where he had come from.

The athletic director of Hall Township High School testified that he had hired off-duty policemen and teachers to keep order at all high school football games conducted by the defendant. He had been employed at the high school for approximately seven years preceding the date of the accident and had attended every home football game held at the school during that time. He responded in the affirmative when asked if he had seen boys and girls at

almost every game "playing tag, or horseplaying and roughing it up" in the area in question. However, when he was later asked if there was "rowdiness and horseplaying by these kids in that area," he responded that he did not know whether it should be called rowdiness and horseplay but the children were definitely there. He further testified that on previous occasions he had tried to "correct" the children but that, as soon as he left, they were back at it again. He knew from his personal observation that a policeman was in the area of the accident on the night in question.

The trial court allowed the defendant's motion for a directed verdict on the sole ground that plaintiff was a licensee on the defendant's premises and that there was no proof whatsoever that defendant had breached its duty to refrain from wilful and wanton misconduct. On appeal, the appellate court agreed with the trial court that a verdict should be directed in favor of the defendant but stated that it preferred that such ruling be based upon the immunity granted by the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, par. 1–101 *et seq.*) and section 24–24 of the School Code (Ill. Rev. Stat. 1971, ch. 122, par. 24–24) as construed by this court in *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165. Considering the state of the record before us, we are unable to concur with the appellate court's conclusions regarding defendant's immunity under the above-referred-to statutes and are likewise unable to agree with the court's further determination that "irrespective of the standard of care which might have been required in this case, no verdict in favor of the plaintiff could stand as against the defendant school directors." 43 Ill. App. 3d 331, 334.

The Local Governmental and Governmental Employees Tort Immunity Act (hereafter referred to as the

Tort Immunity Act) provides, *inter alia,* that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." (Ill. Rev. Stat. 1971, ch. 85, par. 2—201.) Section 2—109 of the Act also provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." (Ill. Rev. Stat. 1971, ch. 85, par. 2—109.) However, it is provided in section 9—103(b) of the Act (Ill. Rev. Stat. 1971, ch. 85, par. 9—103(b)) that such immunity may be waived if a local public entity has secured liability insurance as provided in that section. (See *Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274; *Fanio v. John W. Breslin Co.* (1972), 51 Ill. 2d 366.) The trial court did not pass upon the issue of immunity, since it was not pleaded by the defendant or otherwise asserted as a defense in the trial court but was raised for the first time in the appellate court. In our opinion, the record and briefs now before us totally fail to provide any basis for reaching a conclusive determination that the Tort Immunity Act afforded defendant immunity in this case. To the contrary, we note that on this appeal the defendant does not dispute the statement by plaintiff in her brief that the defendant carried liability insurance. As we have previously observed, the existence of such insurance may have waived defendant's immunity pursuant to section 9—103(b) of the Act and may well explain why the defendant did not allege immunity as a defense in the trial court proceedings.

At the time of plaintiff's injury section 24—24 of the School Code provided in pertinent part:

> "Teachers and other certificated educational employees shall maintain discipline in the schools. In all matters relating to the discipline in and conduct of the

schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." (Ill. Rev. Stat. 1971, ch. 122, par. 24—24.)

Since the foregoing statute specifically confers upon educators the status of parent or guardian to the students, and since a parent is not liable for injuries to his child absent wilful and wanton misconduct (*Nudd v. Matsoukas* (1956), 7 Ill. 2d 608), it therefore follows that the same standard applies as between educator and student. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165.) *Kobylanski* involved an action brought by a student against a school district for injuries sustained by the student in a gym class due to the alleged failure of a physical education teacher to provide proper supervision and instruction. We there held that section 24—24 of the School Code was intended to confer *in loco parentis* status in nondisciplinary as well as disciplinary matters, and that the plaintiff student must therefore prove wilful and wanton misconduct on the part of the physical education teacher to recover for the injuries suffered in gym class. We further held that the immunity from ordinary negligence provided by section 24—24 of the School Code is not waived under section 9—103(b) of the Tort Immunity Act by the existence of liability insurance, since the waiver provisions of the latter section apply only to the defenses and immunities provided for in the Tort Immunity Act.

In our view, section 24—24 of the School Code is not applicable here in view of the absence of any *in loco parentis* relationship between the injured plaintiff and the certificated employees of the defendant school district who allegedly failed to exercise proper supervision. As we stated in *Kobylanski,* section 24—24 reflects "a legislative determination that educators should stand in the place of a

parent or guardian in matters relating to discipline, the conduct of the schools and the school children. It is this status as parent or guardian which requires a plaintiff to prove wilful and wanton misconduct in order to impose liability upon educators." (63 Ill. 2d 165, 174.) That status is clearly lacking here, and it seems evident that the purpose of the immunity which arises from such status would not be served by extending it to immunize school districts from liability to third parties for ordinary negligence in situations such as that now before us. We accordingly hold that section 24—24 of the School Code does not provide any basis for affirmance of the trial court's decision in this case.

It is unnecessary to dwell at length on the common law distinctions between invitees and licensees which have evolved over the years. It suffices to observe that the general definition of an invitee is a visitor who comes upon premises at the invitation of the owner in connection with the owner's business or related activity. (*E.g., Ellguth v. Blackstone Hotel, Inc.* (1951), 408 Ill. 343; *Milauskis v. Terminal R.R. Association* (1919), 286 Ill. 547; *Purtell v. Philadelphis & Reading Coal & Iron Co.* (1912), 256 Ill. 110.) Licensees are persons who have not been invited to enter upon the owner's premises and who come there for their own purposes and not those of the owner. (*Pauckner v. Wakem* (1907), 231 Ill. 276.) However, their presence is condoned by the owner, which distinguishes them from trespassers. The trial court concluded in the case at bar that since the plaintiff had not purchased a ticket but rather had attended the football game using a complimentary season pass, there was an absence of "commercial benefit" to the defendant school district, and she must therefore be considered a licensee. For the reasons hereafter stated, we must disagree with that conclusion.

In determining whether or not a person is an invitee or a licensee in a given situation, appellate courts in this State

have often looked at the surrounding circumstances to determine whether, as between the visitor and the owner, there was a "mutuality of interest in the subject to which the visitor's business relates" (*Jones v. 20 North Wacker Drive Building Corp.* (1947), 332 Ill. App. 382, 385), "a mutually beneficial interest" (*Augsburger v. Singer* (1968), 103 Ill. App. 2d 12, 15; *Drews v. Mason* (1961), 29 Ill. App. 2d 269), a "mutuality of interest" (*Olsen v. Chicago Dock & Canal Co.* (1972), 5 Ill. App. 3d 1105, 1108), a "mutuality of benefit or a benefit to the owner" (*Madrazo v. Michaels* (1971), 1 Ill. App. 3d 583, 587), or whether the visitor had come to "transact business in which he and the owner have a mutual interest or to promote some real or fancied material, financial, or economic interest of the owner" (*Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d 83, 87). Such inquiries into the purpose and nature of the visit were deemed relevant, particularly in cases involving implied invitations, to ascertain whether the visitor was upon the owner's premises within the scope and purpose of the invitation or for some other reason.

That type of analysis is not necessary here. In our opinion, the complimentary pass issued to plaintiff was tantamount to an express invitation to attend Hall Township High School football games, and there can be no question about the fact that at the time of her injury, plaintiff was acting within the scope of that invitation. Unlike a person who comes upon an owner's premises for his own purposes rather than those of the owner and whose presence is merely condoned by the owner, plaintiff in this case was expressly invited and encouraged to come to the defendant's football stadium to swell the crowd in support of its team. In this type of situation, it would be entirely illogical to conclude that a person attending the game using a complimentary pass provided by the school district should be owed a lesser duty of care than a person otherwise similarly situated who had purchased a ticket. In

our view, both persons should be owed the same duty of reasonable care, and we so hold.

Upon application of a reasonable care standard to the case at bar, we cannot conclude that all of the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defendant that no verdict for the plaintiff could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The question of whether defendant failed to exercise reasonable care in supervising children attending the football game and whether such failure, if found to exist, was the proximate cause of plaintiff's injuries, should have been submitted to the jury.

Accordingly, the judgments of the appellate court and trial court are reversed and the cause is remanded to the trial court for a new trial.

*Reversed and remanded.*

MR. JUSTICE GOLDENHERSH, specially concurring:

I agree that section 24–24 of the School Code is not applicable to this case, and I concur in the holding that the judgments of the appellate and circuit courts must be reversed and the cause remanded. In its discussion of section 24–24 the majority states, "Since the foregoing statute specifically confers upon educators the status of parent or guardian to the students, and since a parent is not liable for injuries to his child absent wilful and wanton misconduct (*Nudd v. Matsoukas* (1956), 7 Ill. 2d 608), it therefore follows that the same standard applies as between educator and student. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165.)" (69 Ill. 2d at 636.) In our dissent in *Kobylanski,* Mr. Chief Justice Ward, Mr. Justice Schaefer and I said: "Although not made an issue in these appeals, we consider it appropriate to comment upon one additional matter. The majority, and

apparently the parties, appear to accept as settled law 'that a parent is not liable for injuries to his child absent wilful and wanton misconduct. See *Mroczynski v. McGrath,* 34 Ill. 2d 451, 455; *Nudd v. Matsoukas,* 7 Ill. 2d 608, 619.' (63 Ill. 2d at 170.) On the contrary, this court has never decided that question. In *Nudd,* wilful and wanton misconduct was alleged (7 Ill. 2d at 610), and the language to which the majority opinion refers (7 Ill. 2d at 619) does not hold that parental immunity bars an action based on negligence. *Mroczynski* explains what was said in *Nudd* but does not decide the question." 63 Ill. 2d 165, 178-79.

If, as the majority states, the rule in this jurisdiction is that "a parent is not liable for injuries to his child absent wilful and wanton misconduct" it should rest on some ground more sound than the repetitive misreading of *Nudd v. Matsoukas.*