DEBRA M. WILKOSZ, Plaintiff-Appellant, *v.* ROBERT A. WILKOSZ *et al.*, Defendants-Appellees.

Second District No. 83—657

Opinion filed June 6, 1984.

Peter D. Michling, of Weisz & Weisz, of Woodstock, for appellant.

Thomas F. Loizzo, of Kell, Conerty & Poehlmann, of Woodstock, for appellees.

JUSTICE HOPF delivered the opinion of the court:

This case concerns the doctrine of parent-child tort immunity and raises the question of whether the immunity should bar a negligence claim brought by an 18-year-old against her father. Debra M. Wilkosz, plaintiff, alleged that the negligence of her father, Robert A. Wilkosz, defendant, caused an automobile collision which resulted in her sustaining severe and permanent injury. Defendant moved for summary judgment contending that there was no genuine issue as to any material fact. The circuit court of McHenry County granted summary judgment as to those counts directed against defendant Wilkosz and plaintiff appeals.

Plaintiff raises the following issues on appeal: (1) whether the doctrine of parent-child tort immunity applies only to unemancipated minor children; (2) whether the factual situation in the present case fits within the "beyond the family purpose" exception to the parent-child tort immunity doctrine; (3) whether questions of fact existed which make the imposition of summary judgment inappropriate; (4) whether the doctrine of parent-child tort immunity should be abolished in Illinois; and (5) whether summary judgment was improperly granted because the parent-child tort immunity does not bar actions based on wilful and wanton conduct.

It was a dark and snowy night when defendant drove to pick up his daughter from her part-time job at Kentucky Fried Chicken near Crystal Lake, Illinois. At approximately 8:15 p.m. on January 12, 1982, defendant and his daughter proceeded to McHenry Jr. College to pick up defendant's son, Richard. Because Richard was not ready to leave school, plaintiff and defendant headed back to Crystal Lake. According to plaintiff's deposition, they were going to pick up Richard later, at about 9 p.m. While driving down snow-covered U.S. Route 14 in Crystal Lake, plaintiff and defendant were involved in a collision with another vehicle. Plaintiff does not remember any details of the accident and only remembers waking up in the hospital afterwards. Plaintiff was 18 years of age at the time of the accident.

Plaintiff's suit alleged in counts I and II that her father's negligence caused her to sustain severe and permanent injury. Count III of the complaint was directed against the driver of the other vehicle involved in the collision, Vernon L. Welge, Jr. Plaintiff's claim against Welge has been stayed pending this appeal. Welge brought suit against defendant herein in the related case of Welge v. Wilkosz. Defendant in the instant case filed a motion to dismiss, alleging the family, or parent-child, tort immunity doctrine barred actions for negligence between parents and children when the complained of conduct

arises out of a family relationship and is directly connected with family purposes and objectives. Defendant argued that the complaint failed to make any affirmative allegation of facts to show that plaintiff's injury arose from any activity outside of the family relationship. Plaintiff's request for leave to amend was granted.

Plaintiff then amended her complaint to include the following language:

"b. Defendant, ROBERT A. WILKOSZ, prior to the occurrence complained of, had just picked up Plaintiff at her place of employment and was in the process of transporting her to her home; Plaintiff's employment was not family-related and thus was outside the family relationship."

Defendant subsequently moved for summary judgment. In support of the motion he attached excerpts from plaintiff's deposition in this case and his own deposition in Welge v. Wilkosz. Plaintiff had stated that her dad picked her up from work and they went to her brother's school and found he was unable to get out of school early. She stated that she did not know where they were going at the time of the accident—just that they were going to Crystal Lake and were going to return to pick up her brother at 9 p.m. The excerpt from defendant's deposition iterated a similar scenario. After finding out that his son, Richard, did not get out early because of the snow conditions, plaintiff and defendant turned back toward Crystal Lake. Defendant did not know if they were going home or what they were going to do until they picked up Richard.

Plaintiff then filed a second amended complaint, which alleged in count I, *inter alia*, that defendant was engaged in an activity outside the family relationship in that he was "engaged in a project unrelated to her [plaintiff], namely picking up the brother to take him from school to his residence; ***." The complaint again alleged that plaintiff's employment was "not family-related and thus was outside the family relationship."

Defendant then amended his motion for summary judgment so as to include complete copies of the depositions of plaintiff and defendant. Plaintiff's deposition revealed that she had no recollection of how the accident occurred except that the rear of the car fishtailed briefly. In the remaining portion of the deposition she detailed the extent of her injuries. Defendant's complete deposition was not made part of the record on appeal. Without comment, the trial court found no genuine issue as to material fact and granted defendant's motion for summary judgment on both counts. Plaintiff's motion to consolidate this cause with Welge v. Wilkosz was de-

nied. The trial court found no just reason to delay enforcement or appeal. 87 Ill. 2d R. 304(a).

Plaintiff's first contention on appeal is that the parent-child immunity doctrine applies only to unemancipated minor children. She contends that the tort immunity rule does not apply to her because she is emancipated. However, her argument that she is emancipated turns solely on the fact that she was 18 at the time of the accident. We believe that, for purposes of the parent-child immunity doctrine, age is but one of the factors to be considered in determining whether an individual is emancipated.

Plaintiff argues that Illinois statutory law provides that a "person who has attained the age of 18 years is of legal age for all purposes except as otherwise provided in the Illinois Uniform Gifts to Minors Act." (Ill. Rev. Stat. 1979, ch. 110½, par. 11—1.) Plaintiff urges that because she was 18 at the time of the accident she was an adult and, therefore, the parent-child immunity doctrine does not apply. We disagree. The question presented in this case is not whether plaintiff is an adult or a minor, but whether she is emancipated from her parents. The above-quoted statute is found in the Probate Act of 1975, which is not in issue here.

The main case cited by plaintiff in support of this proposition is *Waldron v. Waldron* (1973), 13 Ill. App. 3d 964, 301 N.E.2d 167. However, *Waldron* concerned the question of whether a father was required to continue making support payments to his son even though the legislature had reduced the age of majority from 21 to 18 years of age. (Ill. Rev. Stat. 1971, ch. 3, par. 131.) *Waldron* was merely concerned with whether the son was a "minor," not whether he was emancipated. *Waldron* does not support plaintiff's contention.

The case law which has considered the issue of what constitutes "emancipation" does not stress the age of the child as a determinative factor. For example, in *State Farm Mutual Automobile Insurance Co. v. Differding* (1977), 46 Ill. App. 3d 15, 360 N.E.2d 522, *rev'd on other grounds* (1977), 69 Ill. 2d 103, 370 N.E.2d 543, the court considered the question of what constitutes "emancipation" without mentioning the age of the party. The *Differding* court considered the question so as to determine whether a daughter qualified for automobile liability insurance coverage under her family insurance policy. The daughter had subleased an apartment and was in graduate school at Northern Illinois University in DeKalb. Nonetheless, the court held, she was unemancipated and did qualify as a resident of the parents' household. After discussing the question of who was responsible for the ambiguity created by the policy language "unemanci-

pated children" the court stated:

> "Even without the rule of construction in favor of insured persons and against insurance companies the same result would be reached. Along with the Illinois appellate court in *Waldron* the Illinois legislature recognizes parental rights and duties as to children who have reached the age of majority. By State statute the county circuit court may order payments for support of a child whether of minor or majority age. (Ill. Rev. Stat. 1973, ch. 40, pars. 14, 19.) The law in Illinois is in accord with the common law and the common understanding of the term. *The test is not the age of the child but whether there is an entire surrender of the right to care, custody and earnings of such child as well as a renunciation of parental duties.*" (Emphasis added.) (*State Farm Mutual Automobile Insurance Co. v. Differding* (1977), 46 Ill. App. 3d 15, 20, 360 N.E.2d 522, 525-26.)

The court noted that the most important circumstance in making a determination of whether the daughter was unemancipated was that she maintained a permanent residence with her family during her enrollment at the school. While *Differding* was concerned with construing an insurance policy, we believe it is persuasive authority for defining what constitutes emancipation for purposes of parent-child immunity.

The parent-child immunity doctrine, or as it is sometimes called the parental immunity doctrine, has generally been held to mean that the child may not recover damages for injuries sustained due to the parents' ordinary negligence, in that a parent is not liable absent wilful and wanton misconduct. The doctrine was first recognized in Illinois in the case of *Foley v. Foley* (1895), 61 Ill. App. 577, which established the principle that a parent is immune from recovery for injuries sustained in the exercise of family rights. This principle has been consistently applied since *Foley*, though exceptions have been created, as, for example, the situation where the immunity was found to have been dissolved by the death of the parent from whom a minor sought relief. (*Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 277 N.E.2d 778.) The purpose of the doctrine is founded in a policy in Illinois to promote an atmosphere of cooperation, discipline and understanding in the family. The justification for the rule is that the courts are reluctant to create litigation and strife between members of a family unit. (*Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 619, 131 N.E.2d 525, 531.) That policy is not set forth in detail here, but was discussed in full in the case of *Mroczynski v. McGrath* (1966), 34 Ill. 2d 451, 216 N.E.2d 137.

While certain exceptions to the parental immunity rule have been

created, the rule was recently affirmed by a majority of our supreme court. The court held that teachers in the school system stand in the place of a parent or guardian in matters relating to discipline, in the absence of wilful or wanton misconduct. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705.) The *Kobylanski* court determined that the immunity conferred on teachers under the tort immunity act was not derived from statute but from a legislative determination that the teacher stands in the place of the parent or guardian in matters relating to discipline.

Defendant contends that the question of what constitutes emancipation is a question of fact for the trier of fact to determine. This particular point was also addressed in the case of *State Farm Mutual Automobile Insurance Co. v. Differding* (1977), 46 Ill. App. 3d 15, 20, 360 N.E.2d 522, 525, *rev'd on other grounds* (1977), 69 Ill. 2d 103, 370 N.E.2d 543, where the court stated that what constitutes an emancipation is a question of law, but whether there has been an emancipation is a question of fact. Thus defendant's contention that solely because she reached the age of 18 she is emancipated is a legal, not factual, question. Rather, the facts and circumstances surrounding the emancipation would be a question of fact. This would include questions of residency, marital status, and such considerations as one's address on a driver's license.

■ Simply stated, our review of the policy underlying the parental immunity doctrine leads to the conclusion that age is not the sole determinative factor in defining what constitutes an emancipation. The parental immunity doctrine has as its basis a policy of trying to avoid litigation and strife between members of the family unit. (*Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 619, 131 N.E.2d 525, 531.) One does not necessarily lose his status as a member of a family unit simply by reaching the age of 18. Other considerations must be taken into account. For example, in *Zozaski v. Mather Stock Car Co.* (1942), 312 Ill. App. 585, 38 N.E.2d 825, a self-supporting son was considered "emancipated" in light of the fact that he was self-supporting and despite the fact that he was a minor.

The public policy which underlies the parental immunity doctrine remains equally valid when the child reaches the age of majority. Thus, in the case at bar, the fact that plaintiff was 18½ years old does not necessarily mean she is emancipated. Rather, in light of the policy reasons underlying the parental immunity doctrine, age is only one of the many considerations that, taken as a whole, determine whether one is emancipated.

■ In the second issue plaintiff raises on appeal, she assumes, *ar-*

*guendo*, that her age is not a bar to application of the parental immunity doctrine. Plaintiff's contention is that the factual situation presented in this case fits within the "beyond the family purpose" exception to the doctrine of parental immunity. We disagree.

The uncontroverted evidence in this case is that defendant picked up plaintiff from work and was driving to Crystal Lake, where they lived, at the time of the accident. Both parties stated they were going to return to school within an hour to pick up plaintiff's brother. This situation clearly shows that the parties' conduct was directly connected with family purposes and objectives.

Plaintiff contends that the instant case parallels the facts and rationale set forth in the case of *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12. *Schenk* was a suit by a father against his 17-year-old, unemancipated daughter for injuries sustained by him when she negligently ran into him with a car on the streets of Bloomington. The *Schenk* court found that the complaint did not suggest in any manner that the father who was crossing the street or the unemancipated daughter in operating the car were "to any extent performing a duty arising out of the family relationship or engaged in any enterprise having for its purpose the furtherance of the family relationship." (*Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 203, 241 N.E.2d 12, 14.) Thus, the *Schenk* court found that plaintiff's complaint did state a cause of action for tortious conduct having no direct family relationship. A similar analysis was made by the court in *Cummings v. Jackson* (1978), 57 Ill. App. 3d 68, 372 N.E.2d 1127, which allowed a minor child to bring suit against her mother for her negligent failure to maintain the trees on the area immediately adjacent to the home. However, both *Cummings* and *Schenk* focused on the duty owed by the alleged tortfeasor. Because that duty was owed to the general public, and because the activity the parties were engaged in did not arise out of the family relationship, the family purpose exception was applied and the minor child was allowed to bring a claim against his or her parents. However, in the instant case, as discussed above, the facts show that the parties were engaged in activity which constituted a family purpose.

The parental immunity doctrine was applied in the recent case of *Hogan v. Hogan* (1982), 106 Ill. App. 3d 104, 435 N.E.2d 770. In *Hogan* the plaintiff was an unemancipated minor child who was injured on her way home from a piano lesson. Her mother was driving the vehicle at the time of the accident. The court held that the defendant was operating the motor vehicle to accomplish a family purpose and that she, therefore, was immune from her daughter's suit. The facts

of *Hogan* closely parallel those of the instant case.

The pleadings, depositions and record in the instant case show that defendant and plaintiff were engaged in conduct which arose from and had a "direct connection with the family relationship." (*Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 206, 241 N.E.2d 12, 15; *Illinois National Bank & Trust Co. v. Turner* (1980), 83 Ill. App. 3d 234, 237, 403 N.E.2d 1256, 1258.) Therefore, the parties' activities did not fall within the "beyond the family purpose" exception.

■ Plaintiff's next contention on appeal overlaps with that just discussed. She contends that different inferences may have been drawn from the facts of this case such that, with regard to the "beyond the family purpose" exception, summary judgment was inappropriate. We disagree. The record of this case, as previously described, shows that the parties' conduct was directly connected with a family purpose, *i.e.*, picking up a daughter from work and a son from school. Although plaintiff and defendant both indicated that they were "not sure" if they were going home or elsewhere at the time of the accident, there was no factual dispute presented so as to preclude imposition of summary judgment.

■ Plaintiff next contends that the doctrine of parent-child tort immunity should be entirely abolished. While the State has an interest in maintaining harmony and avoiding strife in the family, she urges, the doctrine lacks societal merit or benefit when applied. In support of this contention, plaintiff's peregrinations include a discussion of what policies should prevail if insurance coverage is available. While, as a practical matter, the existence of insurance may have an effect on a case which is difficult to measure, we have consistently stated that the existence or nonexistence of protective insurance is not a sound basis for the determination of liability. (*Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 205, 241 N.E.2d 12, 14; *Hogan v. Hogan* (1982), 106 Ill. App. 3d 104, 107, 435 N.E.2d 770, 772.) Thus, the existence of insurance is not a relevant concern in weighing the policy considerations of the parental immunity doctrine. Additionally, we believe the parental immunity doctrine should remain the accepted policy in Illinois. *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705; *Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 277 N.E.2d 778.

■ Plaintiff's final contention on appeal is that summary judgment was improperly granted with regard to the second count of the complaint which alleged wilful and wanton conduct. On this point, the parties are in agreement that the parental immunity doctrine does not bar actions based on wilful and wanton conduct. (*Nudd v. Matsoukas*

(1956), 7 Ill. 2d 608, 131 N.E.2d 525; *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165, 395 N.E.2d 538.) Plaintiff contends that defendant received a traffic ticket as a result of the incident and that the undisputed facts clearly support the inference that defendant was driving his vehicle in a manner contrary to what would be considered reasonable under the conditions. Thus, she contends, there is a factual question as to whether defendant's behavior was wilful and wanton. We disagree. Plaintiff's contention that the defendant was not driving in a manner "reasonable for the snowy conditions" falls short of showing facts sufficient to allege wilful and wanton misconduct. Wilful or wanton conduct has been described as "a course of action which shows an actual or deliberate intention to harm or injure another; as an intentional disregard of a known duty which is necessary to the safety of others or to their property; and as an act committed under circumstances exhibiting a reckless disregard for the safety of others." (*Glaze v. Owens* (1968), 104 Ill. App. 2d 172, 176, 243 N.E.2d 13, 15.) The record does not support plaintiff's contentions that defendant's conduct was wilful and wanton. Summary judgment must be rendered if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) Defendant here supported his motion with the depositions of both plaintiff and defendant. From these depositions and the pleadings we find that the record supports the trial court's determination that there was no genuine issue of material fact. The granting of summary judgment as to counts I and II of plaintiff's complaint is affirmed.

To summarize, the cases which discuss the parental immunity doctrine indicate that age is but one of the considerations in determining emancipation. We agree with the trial court's determination that the defendant was operating the motor vehicle to accomplish a family purpose and that he is, therefore, immune from suit. The cases in Illinois do not support plaintiff's argument that the doctrine of parent-child tort immunity should be abolished in Illinois. Further, the trial court properly granted summary judgment.

For the reasons stated, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

NASH and UNVERZAGT, JJ., concur.