HEATHER CATES, a Minor, by her Mother and Next Friend, Nancy Cates, n/k/a Nancy Cates Schmittling, Plaintiff-Appellant, v. TIMOTHY CATES, Defendant-Appellee (Nancy Cates Schmittling, Plaintiff; Robert Stookey, as Public Adm'r of the Estate of Phillip Darwin, Deceased, *et al.*, Defendants).

Fifth District   No. 5—89—0615

Opinion filed February 7, 1992.—Rehearing denied March 30, 1992.

CHAPMAN, J., dissenting.

Neubauer & Meyer, of Fairview Heights, for appellant.

Theodore J. MacDonald, Jr., and J. Todd Hayes, both of Burroughs, Simpson, Hepler, Broom & MacDonald, of Edwardsville, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

Plaintiff was riding in a car driven by her father, who was divorced from her mother, who had custody. She and her father were on their way to a circus, but when it began to rain, they decided to drive to her father's home, instead. On the way, her father drove from Illinois Route 15 onto Illinois Route 157. Keeley and Sons, Inc., was repairing the intersection under a contract with the State. As plaintiff's father drove onto Route 157, another driver, Phillip Darwin, ran a stop sign and crashed into plaintiff's father's car. Plaintiff was seriously injured.

Plaintiff, by her mother and next friend, Nancy Cates Schmittling, sued Phillip Darwin's estate, Keeley and Sons, Inc., and her father, Timothy Cates, for her injuries. Her father filed a motion for summary judgment claiming that his daughter's suit against him was barred by the doctrine of parental immunity. The circuit court granted him summary judgment. Plaintiff appealed, and only plaintiff and her father are parties to this appeal.

We reverse and remand.

Plaintiff asks this court to abolish the doctrine of parental immunity to permit her to sue her father for negligence.

Defendant argues that parental immunity was adopted by the Illinois Supreme Court and, therefore, only the Illinois Supreme Court has the power to abolish it. See *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N.E.2d 525; *Stallman v. Youngquist* (1988), 125 Ill. 2d 267, 531 N.E.2d 355; *Ackley v. Ackley* (1988), 165 Ill. App. 3d 231, 518 N.E.2d 1056.

Parental immunity is a creature of the common law and was judicially created by the Mississippi Supreme Court in 1891. (See *Hewellette v. George* (1891), 68 Miss. 703, 9 So. 885.) Four years later, in 1895, the Illinois Appellate Court, citing no authority, said that "[i]t is doubtless the law, that a child can not maintain an action for damages on account of maltreatment against a parent." (*Foley v. Foley* (1895), 61 Ill. App. 577, 580.) Sixty-one years later, the Illinois Supreme Court addressed the issue for the first time. *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N.E.2d 525.

In *Nudd*, a child sued his father for willful and wanton misconduct. His father argued that parental immunity barred the action and that the supreme court was bound by *stare decisis* to rule accordingly. The court disagreed, stating:

> "We consider the question before us a novel one in Illinois. The Appellate Court decisions cited to us do not determine the question of parental immunity in case of wilful and wanton misconduct. Any justification for the rule of parental immunity can be found only in a reluctance to create litigation and strife between members of the family unit. *While this policy might be such justification to prevent suits for mere negligence within the scope of the parental relationship* we do not conceive that public policy should prevent a minor from obtaining redress for wilful and wanton misconduct on the part of a parent." (Emphasis added.) (*Nudd*, 7 Ill. 2d at 618-19, 131 N.E.2d at 531.)

The supreme court's holding is clear: a child may sue his parents for willful and wanton misconduct; it did not hold that a parent is im-

mune from suits brought in negligence. We are not free to impute an adoption of parental immunity to *Nudd*, for appellate courts must read cases only in light of the issues brought before the court for determination (*Nix v. Smith* (1965), 32 Ill. 2d 465, 207 N.E.2d 460), and the only issue in *Nudd* was whether "public policy should prevent a minor from obtaining redress for wilful and wanton misconduct on the part of a parent." (*Nudd*, 7 Ill. 2d at 619, 131 N.E.2d at 531.) *Nudd*'s holding, furthermore, should not be read to imply tacit approval of parental immunity for negligence for two cogent reasons: (1) the question of immunity from suits for negligence was not presented and, therefore, not argued to the court, and the competing policies presented by that question might or could differ from the policies involved in consideration of the question of immunity from suits brought for willful and wanton misconduct, rendering it unfair to impute tacit approval of a doctrine not argued; and (2) the very language used by the court is precatory: "[w]hile this policy *might be* such justification to prevent suits for mere negligence," words chosen to alert the reader that the issue has purposely been left open. (Emphasis added.) 7 Ill. 2d at 619.

Since *Nudd*, the supreme court's treatment of parental immunity has been confined to six cases: (1) *Mroczynski v. McGrath* (1966), 34 Ill. 2d 451, 216 N.E.2d 137; (2) *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705; (3) *Tanari v. School Directors of District No. 502* (1977), 69 Ill. 2d 630, 373 N.E.2d 5; (4) *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 373 N.E.2d 1323; (5) *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165, 395 N.E.2d 538; and (6) *Stallman v. Youngquist* (1988), 125 Ill. 2d 267, 531 N.E.2d 355. We examine these cases to determine if parental immunity was ever adopted by the Illinois Supreme Court.

In *Mroczynski*, a son sued his father for, among other things, abandoning him and his mother. The father, having been served summons in Minnesota, where he resided, moved to quash service and dismiss the case. His motions were granted. Plaintiff appealed directly to the supreme court, where the case turned on whether Illinois' long-arm statute conferred jurisdiction over the defendant. It held it did not. In doing so, the court examined whether abandonment of mother and child gave rise to a cause of action. In that analysis, the court reiterated the holding in *Nudd*, *i.e.*, that "public policy in a case of wilful misconduct did not prevent redress of a minor from his parent." (*Mroczynski*, 34 Ill. 2d at 455.) The court went no further. This reiteration, however, is not law, for it is not a holding; it is *dictum* or *obiter dictum*.

In *Kobylanski*, the court reviewed two cases consolidated for the purpose of deciding whether teachers were immune from suit pursuant to the School Code (Ill. Rev. Stat. 1967, ch. 122, pars. 24—24, 34—84a). The court held that sections 24—24 and 34—84a of the Code conferred upon teachers immunity from suits in negligence arising out of matters relating to the discipline in, and conduct of, the schools and the school children. The court stated: "None of the parties *** disputes the fact that a parent is not liable for injuries to his child absent wilful and wanton misconduct." (*Kobylanski*, 63 Ill. 2d at 170, 347 N.E.2d at 709.) Since the parties did not raise the issue whether a parent was immune from suits in negligence brought by his children, the court did not address it. Concerned, however, that the *Kobylanski* majority seemed to accept that a parent is not liable for injuries to his child absent willful and wanton misconduct, Justice Goldenhersh, with two justices joining, stated in dissent that the "court has never decided [the] question [of parental immunity]." *Kobylanski*, 63 Ill. 2d at 179, 347 N.E.2d at 712 (Goldenhersh, J., dissenting).

In *Tanari*, the court reversed the lower court and held that a school district is not immune from suit by a spectator injured by students at a football game. In discussing *Kobylanski*, the supreme court stated: "Since the forgoing statute [section 24—24 of the School Code] specifically confers upon educators the status of parent or guardian to the students, and since a parent is not liable for injuries to his child absent wilful and wanton misconduct (*Nudd v. Matsoukas* (1956), 7 Ill. 2d 608[, 131 N.E.2d 525]), it therefore follows that the same standard applies as between educator and student." (*Tanari*, 69 Ill. 2d at 636, 373 N.E.2d at 7.) Here too, Justice Goldenhersh was compelled to comment on what he termed was "the repetitive misreading of *Nudd v. Matsoukas*." (69 Ill. 2d at 640.) He stated in his concurrence: "The majority, and apparently the parties, appear to accept as settled law 'that a parent is not liable for injuries to his child absent willful and wanton misconduct. [Citations.]' [Citation.] On the contrary, this court has never decided that question." *Tanari*, 69 Ill. 2d at 640, 373 N.E.2d at 9 (Goldenhersh, J., concurring).

That "repetitive misreading of *Nudd v. Matsoukas*" occurred twice more: once in *Gerrity* and once in *Thomas*. In *Gerrity*, the court stated that "it has been recognized as a general rule in this State that children may not maintain actions against their parents for mere negligence but may do so only in cases of wilful and wanton misconduct." (*Gerrity*, 71 Ill. 2d at 49, 373 N.E.2d at 1324.) In *Thomas*, the court stated that "children may not maintain actions for

negligence against their parents." (*Thomas*, 77 Ill. 2d at 171, 395 N.E.2d at 541.) Both cases, while not holding themselves that a parent is immune from suit absent willful and wanton misconduct, impute to *Nudd* an adoption of the doctrine. But, the fact is, the supreme court has never adopted parental immunity.

The only other supreme court case mentioning parental immunity was *Stallman v. Youngquist* (1988), 125 Ill. 2d 267, 531 N.E.2d 355, a case that held that a fetus born alive has no cause of action against its mother for the unintentional infliction of prenatal injuries. There, the court stated that "it [was] unnecessary *** to reach the issue concerning the status of the parental immunity doctrine" (*Stallman*, 125 Ill. 2d at 269, 531 N.E.2d at 355), and so did not address it. The court did state, however: "Insofar as *Stallman I* [*Stallman v. Youngquist* (1984), 129 Ill. App. 3d 859, 473 N.E.2d 400] and *Stallman II* [*Stallman v. Youngquist* (1987), 152 Ill. App. 3d 683, 504 N.E.2d 920] purport to effect a change in the status of the parental immunity doctrine as it existed before the appeal to the *Stallman I* court, the judgments are vacated." (*Stallman*, 125 Ill. 2d at 271, 531 N.E.2d at 356.) Since the supreme court specifically said "we do not decide the issue," we fail to see how anyone could contend that *Stallman* adopted the doctrine of parental immunity. Furthermore, nothing could have been implied by the court when it said: "Insofar as *Stallman I* and *Stallman II* purport to *** change *** the status of *** parental immunity *** as it existed before [the first appeal], the judgments are vacated." (125 Ill. 2d at 271.) Nothing can be inferred from this statement simply because *Stallman* held only that a fetus has no cause of action against its mother; had the court not added this language, some lawyers might have expanded the holding, a mischief sought to be avoided by the supreme court.

■ A cardinal principle of our common law system is that a holding can have no broader application than the facts of the case that gave it birth. (*Nix v. Smith* (1965), 32 Ill. 2d 465, 207 N.E.2d 460). We, as an appellate court, forsake our duty if we refuse to follow that principle. We are not condemning or refusing to follow what the supreme court has ruled; we merely point out the truth. The supreme court has never ruled upon this issue.

To say otherwise is unwise, for it would be most incongruous, and indeed dangerous to our fundamental system of separation of powers, for the Illinois Supreme Court to insist on strict construction of statutes (see *DeClerck v. Simpson* (1991), 143 Ill. 2d 489, 577 N.E.2d 767; *City of Elmhurst v. Buettgen* (1946), 394 Ill. 248, 68 N.E.2d 278), but permit a less rigorous treatment of its own cases and the common law

rules fashioned therein. Since the Illinois Supreme Court never adopted parental immunity, but the Illinois Appellate Court has, we are free to either retain it, retool it, or abolish it. In a larger sense, however, it is not simply a matter of this court being free to abolish or modify the doctrine (*Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12; contra *Ackley v. Ackley* (1988), 165 Ill. App. 3d 231, 518 N.E.2d 1056); rather, it is because the issue has been put to us that we must decide it, at least until the supreme court speaks.

■ Since its inception, courts favoring parental immunity have feared that a suit brought by an unemancipated child might disrupt family harmony, encourage collusion, fraud, and perjury between family members, or impair parental authority or discipline. See *Foley v. Foley* (1895), 61 Ill. App. 577.

We consider first family harmony. We believe the argument that parental immunity is necessary to preserve family harmony is inharmonious with contemporary standards; indeed, it may have never carried much weight. (See, *e.g., Roller v. Roller* (1905), 37 Wash. 242, 79 P. 788 (where an unemancipated daughter was prevented from suing her father who had raped her), *overruled by Borst v. Borst* (1952), 41 Wash. 2d 642, 251 P.2d 149; *Hewellette v. George* (1891), 68 Miss. 703, 9 So. 885 (where the court held that a minor child could not sue her mother for maliciously confining her to an insane asylum); *McKelvey v. McKelvey* (1903), 111 Tenn. 388, 77 S.W. 664, *overruled by Davis v. Davis* (Tenn. 1983), 657 S.W.2d 753 (where the court barred a child from suing a father and stepmother for cruel and inhuman treatment).) Rape. Imprisonment. Cruel and inhuman treatment. Who would believe that in 1992 courts would refuse to hear these cases?

Courts, furthermore, ignore family harmony in other intrafamily suits. For example, an emancipated child can sue a parent for injuries negligently inflicted (see *Logan v. Reaves* (1962), 209 Tenn. 631, 354 S.W.2d 789; *Glover v. Glover* (1958), 44 Tenn. App. 712, 319 S.W.2d 238; contra *Wilkosz v. Wilkosz* (1984), 124 Ill. App. 3d 904, 464 N.E.2d 1232); and children, regardless of emancipation, can sue a parent for breach of contract or on property matters. (See *Streenz v. Streenz* (1970), 106 Ariz. 86, 471 P.2d 282.) We believe a child's body is worthy of as much protection from the law as her property or contractual rights. Can a suit for breach of contract somehow disrupt a family less than a personal injury suit? We fail to see how, for our instincts tell us that it would be more disruptive for a child to sue a parent over the family fortune or a family heirloom or hearth and home than to sue over injuries from a car wreck.

Another principle upon which the doctrine of parental immunity rests is the prevention of collusion, fraud, and perjury between family members. The possibility of these very serious and practical problems, however, exists in all litigation, including other intrafamily litigation not barred by the doctrine. (See, *e.g., Brown v. Brown* (1978), 62 Ill. App. 3d 328, 379 N.E.2d 634 (a case between brother and sister); see also *Streenz v. Streenz* (1970), 106 Ariz. 86, 471 P.2d 282; *Logan v. Reaves* (1962), 209 Tenn. 631, 354 S.W.2d 789.) In these other cases, courts traditionally have relied on the trial lawyers' talents at direct and cross-examination and on the jury's ability to sift through the facts and determine the truth. Do these talents dissipate, disappear, when the suit is for bodily injury? Do defense lawyers, competent in all other matters, become inept when handling a personal injury case? We think not.

Another pillar supporting parental immunity is the fear that suit will undermine parental authority and discipline. These same concerns exist in cases of contract and property, yet they create no immunities. How is it, by what device, do they create immunities in negligence? Are we afraid that a child will sue a parent for negligence in disobedience to that parent's command? Surely not. The fact is suits are most commonly brought where there is insurance coverage, and if no coverage exists, no suit will likely be brought, because there is no way to equitably satisfy the judgment. Are we afraid that a parent will injure a child so there can be recovery against insurance funds? Would any parent ever do that? If so, only the most minuscule number, but the law ordinarily is not framed to prevent the unexpected. Threads of what is expected, what is reasonably forseeable, what is likely or unlikely, weave their way through the fabric of the law, and the recognition of this is, to some extent, the source of Holmes' famous maxim: "The life of the law has not been logic: it has been experience." The law should not be fashioned in such a way that courthouse doors are closed to those who need redress in order to satisfy some remote fear of collusive claims, claims that we know in our collective experience as human beings pose negligible risk.

Courts have increasingly abandoned parental immunity either completely or partially. (See Annot., *Liability of Parent for Injury to Unemancipated Child Caused by Parent's Negligence—Modern Cases,* 6 A.L.R.4th 1066 (1981).) In Illinois a child may sue a parent for willful and wanton misconduct (*Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N.E.2d 525) or when the injury complained of occurred outside the realm of the family relationship or family purpose (*Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12). A child may sue

a deceased parent (*Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 277 N.E.2d 778) or a grandparent (*Gulledge v. Gulledge* (1977), 51 Ill. App. 3d 972, 367 N.E.2d 429), and a defendant may seek contribution from a child-plaintiff's parent (*Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 435 N.E.2d 221).

Nine States have completely abolished parental immunity. (See *Gibson v. Gibson* (1971), 3 Cal. 3d 914, 479 P.2d 648, 92 Cal. Rptr. 288; *Anderson v. Stream* (Minn. 1980), 295 N.W.2d 595; *Guess v. Gulf Insurance Co.* (1981), 96 N.M. 27, 627 P.2d 869; *Gelbman v. Gelbman* (1969), 23 N.Y.2d 434, 245 N.E.2d 192, 297 N.Y.S.2d 529; *Nuelle v. Wells* (N.D. 1967), 154 N.W.2d 364; *Kirchner v. Crystal* (1984), 15 Ohio St. 3d 326, 474 N.E.2d 275; *Winn v. Gilroy* (1984), 296 Or. 718, 681 P.2d 776; *Falco v. Pados* (1971), 444 Pa. 372, 282 A.2d 351; *Elam v. Elam* (1980), 275 S.C. 132, 268 S.E.2d 109.) Nineteen States and the District of Columbia have partially abrogated the doctrine where the minor's injury resulted from a parent's negligent operation of an automobile. (See *Hebel v. Hebel* (Alaska 1967), 435 P.2d 8; *Streenz v. Streenz* (1970), 106 Ariz. 86, 471 P.2d 282; Conn. Gen. Stat. Ann. §52—572(c) (1985); *Williams v. Williams* (Del. 1976) 369 A.2d 669; *Rousey v. Rousey* (D.C. App. 1985), 499 A.2d 1199; *Ard v. Ard* (Fla. 1982), 414 So. 2d 1066; *Farmers Insurance Group v. Reed* (1985), 109 Idaho 849, 712 P.2d 550; *Turner v. Turner* (Iowa 1981), 304 N.W.2d 786; *Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 611 P.2d 135; *Black v. Solmitz* (Me. 1979), 409 A.2d 634; *Sorensen v. Sorensen* (1975), 369 Mass. 350, 339 N.E.2d 907; *Transamerica Insurance Co. v. Royle* (1983), 202 Mont. 173, 656 P.2d 820; *Briere v. Briere* (1966), 107 N.H. 432, 224 A.2d 588; N.C. Gen. Stat., §1—539.21 (1983); *Unah v. Martin* (Okla. 1984), 676 P.2d 1366; *Silva v. Silva* (R.I. 1982), 446 A.2d 1013; *Smith v. Kauffman* (1971), 212 Va. 181, 183 S.E.2d 190; *Lee v. Comer* (1976), 159 W.Va. 585, 224 S.E.2d 721; *Merrick v. Sutterlin* (1980), 93 Wash. 2d 411, 610 P.2d 891; *Allstate Insurance Co. v. Wyoming Insurance Department* (Wyo. 1983), 672 P.2d 810.) Four States have abolished the doctrine except in cases where a parent is exercising authority and discretion as a parent. (See *Rigdon v. Rigdon* (Ky. 1970), 465 S.W.2d 921; *Foldi v. Jeffries* (1983), 93 N.J. 533, 461 A.2d 1145; *Plumley v. Klein* (1972), 388 Mich. 1, 199 N.W.2d 169; *Goller v. White* (1963), 20 Wis. 2d 402, 122 N.W.2d 193). Five States never adopted parental immunity in the first place. *Petersen v. City & County of Honolulu* (1969), 51 Haw. 484, 462 P.2d 1007; *Rupert v. Stienne* (1974), 90 Nev. 397, 528 P.2d 1013; *Kloppenburg v. Kloppenburg* (1938), 66 S.D. 174, 280 N.W.

209; *Wood v. Wood* (1977), 135 Vt. 119, 370 A.2d 191; *Elkington v. Foust* (Utah 1980), 618 P.2d 37.

Having examined the doctrine of parental immunity's history, its rationale and its treatment by our supreme court and the courts in other jurisdictions, we believe it should be abolished.

The question remains, however, whether parental immunity should be abolished completely, or partially. We have examined the facts of this case and have imagined hypothetical cases, ranging from these facts to one where a parent negligently allows the handle of a pot of hot water to extend outward from a stove so that a toddler can reach it and be scalded. We, likewise, have been mindful of the tension that exists between our own language above, on the one hand, wherein we reiterate that cardinal principle of the common law that holdings should be confined to the facts of the case presented, and, on the other hand, society's need to be able to extrapolate broader contours so as to be able to predict results in future cases and lives be governed accordingly. We further are acutely aware that it is the supreme court, not us, who is the ultimate policy arm of the judicial branch and who bears the responsibility of unifying the law throughout this State. Since we cannot predict with certainty all sets of facts that are possible within the field of parental immunity, we cannot predict the impact of a rule of universal applicability. We remember here that the genius of the common law has been its ability to proceed on a case-by-case basis, so that new theories may emerge slowly and be molded by the myriad facts of countless cases until the end result fits contemporary needs. In consideration of these factors, and mindful also that in Illinois automobile insurance is mandatory, we hold that a parent is not immune from suit brought by a child alleging personal injury proximately caused by that parent's negligent operation of an automobile.

The circuit court is reversed and this cause is remanded.

Reversed and remanded.

HARRISON, J., concurs.

JUSTICE CHAPMAN, dissenting:

I do not necessarily disagree with the majority's result, and in fact, I agree with many of their criticisms of the parental-immunity doctrine and a good deal of their analysis of the bases (or lack thereof) of it. I dissent, however, because I think that the supreme court has made its position on parental tort immunity known to date

and that we are required to follow it. Although the Illinois Supreme Court has not decided a case in which the question of parent-child tort immunity for negligent torts was directly at issue, the court's adoption of the rule is implicit in the holdings of several of the cases to which the majority refers. I find it of particular significance that in two of those decisions Justice Goldenhersh, deviating from the majority, protested the court's repeated assumption that a parent is not liable for injuries to his child absent willful and wanton misconduct. He pointed out that the court has never decided the question of parental tort immunity in a negligence context. (See *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 179, 347 N.E.2d at 705, 712 (Goldenhersh, J. dissenting); *Tanari v. School Directors of District No. 502* (1977), 69 Ill. 2d 630, 640, 373 N.E.2d 5, 9 (Goldenhersh, J., concurring).) In light of Justice Goldenhersh's statements and the language of *Nudd*, I cannot agree that the supreme court majority was unaware that it was imputing to *Nudd* an adoption of the rule in this State that children may not maintain actions against their parents for mere negligence. *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N.E.2d 525; *Mroczynski v. McGrath* (1966), 34 Ill. 2d 451, 216 N.E.2d 137; *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705; *Tanari v. School Directors of District No. 502* (1977), 69 Ill. 2d 630, 373 N.E.2d 5; *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 373 N.E.2d 1323; *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165, 395 N.E.2d 538; *Stallman v. Youngquist* (1988), 125 Ill. 2d 267, 531 N.E.2d 355.

In reviewing the state of the parental-tort-immunity doctrine, one finds that the districts in Illinois have continually precluded children from maintaining negligence actions against their parents because of the parental-tort-immunity doctrine adopted by the supreme court. However, each of the districts has recognized exceptions to the rule. (See *Eisele v. Tenuta* (1st Dist. 1980), 83 Ill. App. 3d 799, 404 N.E.2d 349; *Edgington v. Edgington* (3d Dist. 1990), 193 Ill. App. 3d 104, 549 N.E.2d 942.) In one instance the court permitted minors to maintain a cause of action against their deceased mother's estate for negligence because the policy of maintaining the family relationship underlying the tort-immunity doctrine could not apply where the parent was deceased. (*Johnson v. Myers* (2d Dist. 1966), 2 Ill. App. 3d 844, 277 N.E.2d 778.) Another exception allows a negligence claim if the minor's injuries arose "outside of the family relationship." *Illinois National Bank & Trust Co. v. Turner* (2d Dist. 1980), 83 Ill. App. 3d 234, 238, 403 N.E.2d 1256; *Cummings v. Jackson* (4th Dist. 1978), 57

Ill. App. 3d 68, 372 N.E.2d 1127; see also *Hogan v. Hogan* (5th Dist. 1982), 106 Ill. App. 3d 104, 435 N.E.2d 770.

As the majority point out, other States have relaxed or completely abolished the parental-tort-immunity doctrine. Various commentators have noted the trend toward abolishing the parental-tort-immunity doctrine. (See Rooney & Rooney, *Parental Tort Immunity: Spare the Liability, Spoil the Parent*, 25 New Eng. L. Rev. 1161 (1991); McLeod, *Jilani v. Jilani: The Erosion of the Parental Tort Immunity Doctrine in Texas*, 28 Hous. L. Rev. 717 (1991); Wingerter, *Parent-Child Tort Immunity*, 50 La. L. Rev. 1131 (1990); Fularczyk, *Parent-Child Immunity After Carey v. Meijer, Inc.*, 35 Wayne L. Rev. 153 (1988); Atchison, *Ard v. Ard: Limiting the Parent-Child Immunity Doctrine*, 44 U. Pitt. L. Rev. 977 (1983); Grimm, *Tort—Parental Immunity—Merrick v. Sutterlin*, 93 Wash. 2d 411, 610 P.2d 891 (1980), 56 Wash. L. Rev. 319 (1981).) Because of the exceptions that have been carved by the districts within Illinois, the apparent trend toward partial abrogation or complete abolishment of the doctrine, and the analysis set forth in the majority opinion, the supreme court may want to reexamine the parental-tort-immunity doctrine.

My disagreement with the majority is based on what they say the supreme court says on the issue which obviously differs from my interpretation of the supreme court rulings. I would affirm the decision of the trial court.