## 21257

Kimberly ELAM, by her *Guardian ad Litem*, Barbara Watkins, Appellant, v. Rosa Marie ELAM, Respondent. Stephanie ELAM, by her *Guardian ad Litem*, Barbara Watkins, Appellant, v. Rosa Marie ELAM, Respondent. Randall K. MAW, by his *Guardian ad Litem*, Mary Alice Maw, Appellant, v. Jimmy MAW, Respondent.

(268 S. E. (2d) 109)

*John K. Koon,* Columbia, *for appellants Kimberly and Stephanie Elam.*

*Gerald G. Wilson,* Spartanburg, *for appellant Randall Maw.*

*William W. Watkins, Sr.,* of *Turner, Padget, Graham & Laney,* Columbia, *for respondent Rosa Elam.*

*Love, Thornton, Arnold & Thomason,* Greenville, *for respondent Jimmy Maw.*

*N. Gail Duffie,* of *D. Kenneth Baker, P. A.,* Darlington, *amicus curiae* for *S. C. Trial Lawyers.*

July 2, 1980.

NESS, Justice:

These consolidated appeals present an identical issue: Is § 15-5-210, Code of Laws of South Carolina (1976), which abolishes the parental immunity doctrine only in motor vehicle accident cases, unconstitutional? We conclude it is.

Both cases involve unemancipated minor passengers who were injured while riding in automobiles allegedly operated negligently by a parent. The trial court held the statute violated the equal protection clauses of the South Carolina and United States Constitutions pursuant to this Court's decision in *Marley v. Kirby,* 271 S. C. 122, 245 S. E. (2d) 604 (1978). *Marley* held that South Carolina comparative negli-

gence statute unconstitutional on equal protection grounds as it applied only to motor vehicle accidents.

Appellant Maw poses an additional issue: Assuming the unconstitutionality of the statute, does the court-created parental immunity doctrine withstand constitutional scrutiny? Appellant urges this Court to abandon the common law doctrine on equal protection grounds, and permit suits by injured unemancipated minor against their parents.[1]

Section 15-5-210 provides:

"An unemancipated child may sue and be sued by his parents in an action for personal injuries arising out of a motor vehicle accident. In any such action there shall be appointed a *guardian ad litem* as provided by law for such child."

We first consider the constitutionality of Code § 15-5-210. In *Marley v. Kirby, supra,* we held "[t]he limitation of the operation of the South Carolina statute (adoping comparative negligence) to motor vehicle accidents renders the provision constitutionally defective." 271 S. C. at 125, 245 S. E. (2d) at 606. There is no rational justification for singling out persons injured in automobile accidents for purposes of comparative negligence; similarly, there is no valid reason to treat unemancipated minors injured in automobile accidents differently from their peers tortiously injured in other ways. We, therefore, affirm the trial court's holding of unconstitutionality.

We next consider whether the court-created parental immunity doctrine should be abolished.

An unemancipated minor may sue his parent in a will or contract dispute but not in tort. Harper & James, Law of Torts, § 8:11 at p. 647. An emancipated child, regardless of age, may sue the parent, and the parent may sue the child for personal injuries. *Parker v.*

---

[1] The constitutional issue has not been presented in any previous decision of this Court involving family immunity.

*Parker,* 230 S. C. 28, 94 S. E. (2d) 12 (1956).[2] There is no logical justification for such distinctions.

Respondent first contends the issue of the viability of the common law doctrine was not raised below. However, in holding the statute unconstitutional, the trial court implicitly held no cause of action existed due to the immunity doctrine; therefore the issue was preserved for appeal.

The rationale for the doctrine of parental immunity has been universally condemned by commentators and courts. See, *e.g.,* Chapin, Parent-Child Tort Immunity: A Rule in Need of Change, 27 U. Miami L. Rev. 191 (1972), and *Sorensen v. Sorensen,* 369 Mass. 350, 339 N. E. (2d) 907 (1975). There was no early common law prohibition against suit by child against parent in tort. Eversley, Domestic Relations 554 (2nd Ed. 1896). The parent-child immunity doctrine was created in the case of *Hewlette v. George,* 68 Miss. 703, 9 So. 885 (1891) where the Court reasoned:

". . . But so long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand." 9 So. at 887.

The sole reason advanced for applying the doctrine to automobile tort cases was the "family harmony" theory initially

---

2 It has been held that the parental immunity doctrine does not extend to tortious damage to personal property of a minor. Thus, the automobile owning son whose car is wrecked by his parent may sue for the property damage incurred but not for the personal injuries he sustains by reason of his being a passenger in his parent operated vehicle.

articulated by the *Hewlette* court. *Parker v. Parker, supra.*
The family harmony theory, without more, cannot support
the doctrine against constitutional attack. In *Falco v. Pados,*
444 Pa. 372, 282 A. (2d) 351, 355 (Pa. 1971), the Pennsyl-
vania Supreme Court stated:

"The speculative theory of family disruption upon which
the doctrine of parental immunity is largely based has been
criticized and rejected by legal scholars without exception. As
they point out, it is the injury itself which is the disruptive act,
and with today's sky-rocketing health costs, one which often
works the greatest hardship on the family unit."

Moreover, this Court is not blind to the existence of
universal automobile liability insurance. An injured
daughter suing her automobile driver father, is, in
reality, a daughter suing her father's insurer. Although the
existence of liability insurance does not translate into auto-
matic liability,[3] it is a relevant factor to be considered by this
Court in evaluating the continued vitality of a court-created
common law doctrine. See *Streenz v. Streenz,* 106 Ariz. 86,
471 P. (2d) 282, 284 (1970); *Lee v. Comer,* 224 S. E.
(2d) 721, 723 (W. Va. 1976).

Even without the factor of automobile liability insurance,
the argument that tort actions between parent and child will
foster greater discord than actions in probate or contract is
untenable. Indeed, in those actions, insurance may not be
available, and family possessions are often at stake.

This rationale is further discredited by the fact that a wife
may sue her husband for personal injuries. Logic and justice
are defied by permitting suit by a wife and emancipated
daughter, but not by an unemancipated son when all are in-
jured in the same accident through the negligence of the hus-
band-father.

The family harmony rationale is a specious one which this
Court can no longer embrace. In accord: *Hebel v. Hebel,* 435

---

[3] *Maxey v. Sauls,* 242 S. C. 247, 130 S. E. (2d) 570 (1963).

P. (2d) 8 (Alas. 1967); *Streenz v. Streenz,* 206 Ariz. 86, 471 P. (2d) 282 (1970); *Gibson v. Gibson,* 3 Cal. (3d) 914, 479 P. (2d) 648 (1971); *Peterson v. City & County of Honolulu,* 51 Hawaii 484, 462 P. (2d) 1007 (1969); *Rigdon v. Rigdon,* 465 S. W. (2d) 921 (Ky. 1971); *Plumley v. Klein,* 388 Mich. 1, 199 N. W. (2d) 169 (1972); *Balts v. Balts,* 273 Minn. 419, 142 N. W. (2d) 66 (1966); *Rupert v. Stienne,* 90 Nev. 397, 528 P. (2d) 1013 (1974); *Briere v. Briere,* 107 N. H. 432, 224 A. (2d) 588 (1966); *France v. A.P.A. Transp. Corp.,* 56 N. J. 500, 267 A. (2d) 490 (1970); *Gelbman v. Gelbman,* 23 N. Y. (2d) 434, 297 N. Y. S. (2d) 529, 245 N. E. (2d) 192 (1969); *Nuelle v. Wells,* 154 N. W. (2d) 364 (N. D. 1967); *Falco v. Pados,* 444 Pa. 372, 282 A. (2d) 351 (1971); *Smith v. Kauffman,* 212 Va. 181, 183 S. E. (2d) 190 (1971); *Goller v. White,* 20 Wis. (2d) 402, 122 N. W. (2d) 193 (1963); *Felderhoff v. Felderhoff,* 473 S. W. (2d) 928 (Tex. 1971).

An additional justification for the doctrine advanced by several older decisions in other jurisdictions is that the immunity doctrine prevents collusive lawsuits between parent and child. We reject this for the same reasons noted in *Ramey v. Ramey,* S. C., 258 S. E. (2d) 883 (1979), where we struck down the guest-passenger statute.

As the parental immunity doctrine is court-created, we are required to examine its holdings.[4] *Brown v. Anderson County Hospital Assoc.,* 268 S. C. 479, 234 S. E. (2d) 873 (1977). While this Court adheres to the principle of *stare decisis,* it should not be applied to "effect a petrifying rigidity" in common law. *Id.* at 486, 234 S. E. (2d) 873.

Therefore, we abolish the parental immunity common law doctrine in South Carolina.

---

[4] As this Court observed in *Brown v. Anderson County Hospital Assoc.,* 268 S. C. 479, 234 S. E. (2d) 873 (1977) all court created immunities frustrate our common law system of jurisprudence.

Affirmed in part; reversed in part and remanded for proceedings consistent with this opinion.

LEWIS, C. J., and GREGORY and HARWELL, JJ., concur.

LITTLEJOHN, J., concurs in part and dissents in part.

LITTLEJOHN, Justice (concurring and dissenting) :

I concur in that portion of Mr. Justice Ness's opinion which holds that § 15-5-210, *Code of Laws of South Carolina* (1976) is unconstitutional.

I dissent from that part of his opinion which holds that an unemancipated minor may sue his parents.

In the *Elam* case, the sole issue for determination by the court was whether § 15-5-210 was constitutional, and the only exception in that case reads as follows :

"His Honor, the trial judge, erred in finding that S. C. Code of Laws § 15-5-210 (1976) is constitutionally defective in its limitation to actions arising out of motor vehicle accidents."

In the *Maw* case, this same issue plus an additonal issue were before the lower court. In *Maw*, the court held that parental immunity involved a proper classification and followed the rule apparently first enunciated by this court in *Kelly v. Kelly*, 158 S. C. 517, 155 S. E. 888 (1930). This case has been consistently followed since that time, as recently as *Hyder v. Jones*, 271 S. C. 85, 245 S. E. (2d) 123 (1978). Counsel for the plaintiff-appellant in the *Maw* case, appreciating the fact that the circuit judge's order as relates to the immunity issue was consistent with the rulings of this court over the years, petitioned this court on December 11, 1979, to be allowed :

". . . to attack or argue against previous decisions of this Court and respectfully request this Court to review, modify or overrule the same upon the following reason :

1. That the Parental Immunity Doctrine is based upon an unreasonable classification and is violative of the Equal Pro-

tection Clause of Article I § 3 of the South Carolina Constitution and the Fourteenth Amendment of the United States Constitution."

On behalf of the court, the Chief Justice overruled the petition, stating, "Petition denied. Petition insufficient."

Rule 8 § 10 of the Rules of this court reads as follows:

"Counsel desiring to attack or argue against a decision of this Court, with a view to asking the Court to review, modify, or overrule the same, must petition the Court in writing, at least four days before the call of the case in which such argument is sought to be made, asking permission to do so, and set forth the reasons why the decisions in question should be reviewed, modified, or overruled."

This court, having denied *Maw* the right to argue against the child-parent immunity opinions should not now even consider overruling our previous decisions.

This court may, of course, overrule its immunity opinions without reaching the constitutional equal protection argument; no request has been made for permission to attack our common law made immunity rulings. I do not consider a review of our previous rulings appropriate; first, because we have denied to counsel the right to argue that the parental immunity doctrine is based on an unreasonable classification and, secondly, because no request has been made to be permitted to ask this court to reverse its previous common law rulings.

Independent of the fact that the matter is not proper for consideration by this Court, I would adhere to our previous rulings. Classifications are oftentimes difficult, but I have no trouble in agreeing with the lower court, which held:

"The doctrine of Parental Immunity is a well established doctrine of common law in this State and does not violate the constitutional guarantee of equal protection of the laws which requires that all persons be treated alike under like circum-

stances and conditions, both in the privileges conferred and in the liability imposed. Special treatment to minors is evidenced in many legislative enactments ranging from consumption of alcoholic beverages to parents liability for the intentional torts of their minor children under Section 15-75-30 of the South Carolina Code of 1976. The adoption of the parental immunity doctrine with the espoused policy of preserving family unity and harmony and parental discipline is in no way a denial of equal protection under the laws, but rather is a reasonable classification whereby all those persons within that class who are under a like circumstance are treated similarly with regard to privileges and liabilites."

The common law rule was enunciated by this court in 1930 because the issue was submitted to the court. When such issues are brought to the court, a ruling is required and the court is sometimes accused of legislating. If it is legislation, it is legislating of necessity. Since that time the General Assembly of South Carolina has met in 50 regular sessions, plus a few special sessions, and has apparently been satisfied with the doctrine as is indicated by a failure to statutorily abolish parental immunity. If this court, as now composed, may now change the rule of law, the court ten years from now, as then constituted, can change it again. For that matter, this same court could, next year or next case, change it again. The original ruling in 1930 was of necessity. A change of the rule is not of necessity, but is merely a matter of choice or declaration of policy. Under the separation of powers doctrine, the declaration of the rule enunciated should be left to the General Assembly.

I am not unaware of the fact that the courts of some states have abolished parental immunity, but I am simply not impressed by the logic. Such is inconsistent with the declared policy of this court.

I would affirm the orders of the lower court in both the *Elam* and the *Maw* cases.