MAYBERRY v PRYOR

Docket No. 63596. Submitted June 7, 1983, at Lansing.—Decided June 4, 1984. Leave to appeal granted, 419 Mich —.

Justin Mayberry was allegedly injured when bitten by a dog owned by Ralph J. and Susan B. Day. At the time of the alleged attack by the dog, Justin was three years old and in the temporary foster care of Alfred and Carol Pryor pursuant to a probate court order. Kay Mayberry, as conservator of the estate of Justin Mayberry, brought a negligence action in Saginaw Circuit Court against the Days and the Pryors. The complaint alleged that the Pryors had left Justin alone and unattended on the front porch or in the front yard of their residence, that the Pryors failed to provide Justin with supervision adequate to assure his safety, and that the Pryors recklessly and negligently allowed Justin to enter into a situation foreseeably dangerous to his person. The Pryors moved for summary judgment. Gary R. McDonald, J., granted the Pryors' motion for summary judgment. Plaintiff appealed from the granting of the Pryors' motion for summary judgment on leave granted. *Held:*

1. Michigan permits a child to maintain a lawsuit against his or her parent for injuries suffered as a result of alleged ordinary negligence except where the alleged negligence involves an exercise of reasonable parental authority over the child or an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

2. The Michigan parental immunity rule is applicable to those persons who are of *in loco parentis* status. Persons who

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5] 59 Am Jur 2d, Parent and Child §§ 152, 153.

Liability of parent for injury to unemancipated child caused by parent's negligence—Modern cases. 6 ALR4th 1066.

Liability of parent or person in loco parentis for personal tort against minor child. 89 ALR2d 396.

[2, 3] 59 Am Jur 2d, Parent and Child § 155.

[4] 57 Am Jur 2d, Negligence § 33.

[5] 75 Am Jur 2d, Trial § 321.

assume foster care of a child pursuant to a probate court order stand *in loco parentis* to the child and are within the scope of the Michigan parental immunity rule.

3. The question of whether an act by a parent "involves an exercise of reasonable parental authority", as that phrase is used in the Michigan parental immunity rule, is a question of law to be decided by the court rather than a question of fact to be decided by a jury.

4. The trial court did not err in holding that the decision of the Pryors to leave Justin unattended on the porch or in the front yard involved an exercise of reasonable parental authority. Accordingly, the trial court properly granted the motion for summary judgment, since the action pled by plaintiff was barred by the Michigan parental immunity rule and the Pryors were entitled to that judgment as a matter of law.

Affirmed.

1. PARENT AND CHILD — TORTS — NEGLIGENCE.

A child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent except (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

2. PARENT AND CHILD — *IN LOCO PARENTIS* — TORTS — IMMUNITY — FOSTER PARENTS.

A person standing *in loco parentis* to a child is immune from tort liability to the child with regard to the exercise of parental functions to the same extent as a natural parent; persons who assume temporary foster care of a child pursuant to a probate court order stand *in loco parentis* to the child.

3. PARENT AND CHILD — NEGLIGENCE — ACTIONS — IMMUNITY.

A child's action based upon negligent supervision against his parents or those standing *in loco parentis* is barred by the present Michigan parental immunity rule, since the alleged negligent act involves the exercise of parental authority over the child.

4. ACTIONS — NEGLIGENCE — DUTY.

In the absence of a legal duty there can be no actionable negligence.

5. PARENT AND CHILD — NEGLIGENCE — ACTIONS — IMMUNITY —
   COURTS.

   The question of whether an act by a parent "involves an exercise
   of reasonable parental authority", as that phrase is used in the
   Michigan parental immunity rule, is a question of law to be
   decided by the court rather than a question of fact to be
   decided by a jury.

*Skinner & Gustafsen* (by *William W. Allsopp*),
for plaintiff.

*Collison, Chasnis & Dogger, P.C.* (by *John A.
Chasnis*), for defendants.

Before: DANHOF, C.J., and ALLEN and K. N. HAN-
SEN,* JJ.

K. N. HANSEN, J. In this action, plaintiff sought
to recover damages for injuries allegedly suffered
by Justin Mayberry when bitten by a dog. The
circuit court granted summary judgment for defen-
dants Alfred and Carol Pryor. Although the circuit
court did not specify the subrule under which it
acted, it is apparent from the record that the court
held that there was no genuine issue as to any
material fact and that defendants Pryor were
entitled to judgment as a matter of law, GCR 1963,
117.2(3). This Court granted plaintiff's delayed
application for leave to appeal.

The affidavits and other evidence before the
circuit court indicate that, at the time of the
accident, Justin Mayberry was just short of four
years old and was temporarily in the foster care of
defendants Pryor pursuant to a probate court
order. Plaintiff's complaint alleged that Justin was
attacked by a dog belonging to defendants Day
when Justin was left alone and unattended on the
front porch or in the yard of the residence of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

defendants Pryor. The complaint further alleged that defendants Pryor failed to provide Justin with supervision adequate to assure his safety and instead recklessly and negligently allowed him to enter into a situation foreseeably dangerous to his person.

Summary judgment for defendants Pryor was based on parental immunity. In *Plumley v Klein,* 388 Mich 1, 8; 199 NW2d 169 (1972), the Court stated the rule of parental immunity which now prevails in Michigan:

> "A child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent. Like our sister states, however, we note two exceptions to this new rule of law: (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." (Footnote omitted.)

For other jurisdictions adopting this rule and the two exceptions, see *Goller v White,* 20 Wis 2d 402; 122 NW2d 193 (1963), *Silesky v Kelman,* 281 Minn 431; 161 NW2d 631 (1968), and *Rigdon v Rigdon,* 465 SW2d 921 (Ky, 1971).

In *Hush v Devilbiss Co,* 77 Mich App 639, 647; 259 NW2d 170 (1977), the Court concluded that the exceptions to the abolition of parental immunity stated in *Plumley* could be invoked by a person standing *in loco parentis* to the child. The Court explained the factors relevant to determination of *in loco parentis* status:

> "Legally, the assumption of *in loco parentis* status is a question of intent. Intent to assume parental status can be inferred from the acts and declarations of the

parties. Some factors to consider are the age of the child; the degree to which the child is dependent on the person claiming to be standing *in loco parentis;* the amount of support, if any, provided; the extent to which duties commonly associated with parenthood are exercised. Providing financial support may be an unimportant consideration in light of the relative situations of the person standing *in loco parentis* and the real parents. In some cases, while providing financial support may be unnecessary, the benefits flowing to the child by reason of someone's assumption of the other infinitely various parental duties may be most essential." (Footnote and citations omitted.) 77 Mich App 649.

*In re Allison,* 336 Mich 316, 321; 58 NW2d 90 (1953), contains the following definition:

"A foster father is defined as a man who has performed the duties of a parent to the child of another by rearing the child as his own child."

Nothing in the statutes governing temporary placement of dependent or neglected children by the probate court in foster care is inconsistent with this definition. See MCL 712A.18; MSA 27.3178(598.18), MCL 712A.19; MSA 27.3178(598.19), and MCL 400.18c; MSA 16.418(3). By assuming temporary foster care of Justin, defendants Pryor demonstrated their intent to perform the duties of parents to the child and thus their intent to temporarily assume parental status. We conclude that, as a matter of law, persons who assume temporary foster care of a child pursuant to probate court order stand *in loco parentis* to the child. For a decision from another jurisdiction reaching the same result, see *Goller v White, supra.*

The gravamen of plaintiff's complaint is negligent parental supervision. In cases interpreting

the *Plumley* rule, this Court has determined that an action for negligent parental supervision is barred because it involves the parent's exercise of authority over the child and thus falls within the first exception stated in *Plumley* to the abolition of parental immunity. *Paige v Bing Construction Co,* 61 Mich App 480, 483-486; 233 NW2d 46 (1975); *McCallister v Sun Valley Pools, Inc,* 100 Mich App 131, 137-139; 298 NW2d 687 (1980); *American States Ins Co v Albin,* 118 Mich App 201, 207; 324 NW2d 574 (1982). Plaintiff relies on *Cole v Sears, Roebuck & Co,* 47 Wis 2d 629, 634; 177 NW2d 866 (1970), in which the court held that a parent's supervision of a child's play did not fall within the second exception to the abolition of parental immunity, that exception being for the exercise of parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care. The Wisconsin court explained:

"Supervision of a child's play indeed involves an area which is essentially parental, but society does not exact a legal duty with respect to such an obligation as is the case with providing a child with food, housing, medical and dental services and education."

We do not agree with the Wisconsin court for two reasons. First, as was pointed out in *Paige,* 61 Mich App 484, the Wisconsin court considered only the second exception to the abolition of immunity. Michigan courts have relied on the first exception to reach a contrary conclusion. Second, we cannot account for the Wisconsin court's statement that society does not exact a legal duty from a parent with respect to supervision of a child's play. Where there is no legal duty, there can be no actionable negligence. *Butrick v Snyder,* 236 Mich

300, 306; 210 NW 311 (1926). The reasoning by which the Wisconsin court concluded that the action was not barred by parental immunity would seem to leave the child without a cause of action at all.

In *Grodin v Grodin,* 102 Mich App 396, 402; 301 NW2d 869 (1980), the Court concluded that the use of the word "reasonable" in the second exception stated in *Plumley* to the abolition of parental immunity required a determination by the trier of fact and therefore precluded summary judgment. "Reasonable" also appears in the first exception. However, in *Paige, supra,* an opinion by the author of *Grodin,* the Court noted the impossibility of determining on a case-by-case basis the extent of the first *Plumley* exception, 61 Mich App 485-486, and held that a complaint for negligent parental supervision failed to state a claim on which relief could be granted. Because the first rather than the second *Plumley* exception is at issue here, *Paige* rather than *Grodin* is the controlling authority.

Moreover, we believe that *Grodin* was incorrectly decided. The *Grodin* Court's reasoning was as follows:

"We reverse and remand for a determination of the 'reasonableness' of the alleged negligent conduct. A determination that the defendant's conduct was unreasonable would take the action out of the second exception of *Plumley, supra,* and thus parental immunity would not be available to defendant Roberta Grodin. A determination by a jury that the defendant mother acted reasonably in her exercise of her discretion would give rise to *Plumley* parental immunity and absolve her of liability." 102 Mich App 401.

The *Grodin* Court misinterpreted *Plumley* when it focused on the reasonableness of the alleged negligent conduct. An examination of the language

from *Plumley* previously quoted shows that the *Plumley* Court used the word "reasonable" to limit the scope of parental authority and parental discretion falling within the exceptions. Proper application of the *Plumley* exceptions requires a determination, not of the reasonableness of the defendant's conduct, but rather of the scope of "reasonable parental authority" and of "reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care".

The judiciary has the power to change the common law. *Placek v Sterling Heights,* 405 Mich 638, 656; 275 NW2d 511 (1979). In *Plumley,* the Court exercised that power by abolishing common-law parental immunity with certain exceptions. Because no authority permits the judiciary to delegate to the jury the power to change the common law, questions concerning the scope of the *Plumley* exceptions must be questions of law, and not questions of fact. Moreover, if the scope of the *Plumley* exceptions was for the trier of fact to determine, the law of parental immunity would vary according to the specific jury impaneled or the specific part of the state in which the case was tried. A similar consideration was among the reasons stated in *Cassidy v McGovern,* 415 Mich 483, 501-502; 330 NW2d 22 (1982), for the Court's conclusion that application of the phrase "serious impairment of body function", MCL 500.3135; MSA 24.13135, was primarily a question of law to be resolved by courts, not juries. We conclude that, despite the uses of the word "reasonable" in the *Plumley* exceptions, determination of whether conduct falls within the exceptions is a question of law for the court. The circuit court did not err by granting summary judgment for defendants Pryor.

Affirmed.