**Deborah Ann Jackson BARRANCO, as Natural Mother and Administratrix of the Estate of Terri Janet Jackson, Deceased, Plaintiff-Appellant,**

v.

**Richard P. JACKSON, Defendant-Appellee.**

Supreme Court of Tennessee, at Jackson.

April 22, 1985.

Ronald P. Stroop, Gregory A. Keyser, Nashville, James Rea, Birmingham, Ala., for plaintiff-appellant.

Leo Bearman, Jr., Larry E. Killebrew, Memphis, for defendant-appellee.

## OPINION

HARBISON, Justice.

In this case the Court is asked to modify or to abolish the rule of parental immunity in tort cases first adopted in this state in *McKelvey v. McKelvey*, 111 Tenn. 388, 77 S.W. 664 (1903), and followed thereafter in numerous cases.

Appellant insists that this rule should be modified in view of the action of the Court in *Davis v. Davis*, 657 S.W.2d 753 (Tenn. 1983) abolishing spousal immunity and in view of the decisions of other states which have modified or abrogated parental immunity.

The majority are of the opinion that there are substantial differences between the parent-child relationship and that of spouses. In the opinion of the majority, the rule announced in *McKelvey* has continuing vitality and should be adhered to unless modified or changed by action of the General Assembly. Accordingly the judgment of the Court of Appeals is affirmed at the cost of appellant, and the cause is remanded to the trial court for any further orders which may be necessary.

COOPER, C.J., and TATUM, Special Justice, concur.

BROCK and DROWOTA, JJ., dissent.

DROWOTA, Justice, dissenting.

Justice Brock and I respectfully dissent from the majority's disposition of this case. Plaintiff has asked this Court to reexamine the doctrine of parental immunity. After careful study, two members of this Court are of the opinion that the application of the doctrine, adopted in Tennessee in 1903, should be restricted. The policy considerations which have been relied upon in the past in support of the doctrine of parental immunity have either been completely eroded and rendered invalid or have no application in the context of the facts involved in the instant appeal.

The majority opinion in adhering to *McKelvey v. McKelvey*, 111 Tenn. 388, 77 S.W. 664 (1903), found it unnecessary to discuss the facts of this case. Justice Brock and I feel that this case warrants a detailed analysis of the many state court decisions that have addressed the modern status of parental immunity.

This wrongful death action was brought by the mother of a deceased, unemancipated minor child against the child's father. The complaint alleges that the minor child was a passenger in an automobile being driven by her father, and her death was the direct and proximate result of the negligent acts of her father. At the time of the accident the mother and father were divorced and the mother had been awarded custody of the minor child.

The Defendant filed a motion to dismiss for failure to state a claim and for judgment on the pleadings. This motion was predicated on the fact that Tennessee's wrongful death statute treats the cause of action as the decedent's, not the surviv-

or's [1], and that suit would therefore be barred by the rule in Tennessee that an unemancipated minor cannot sue its parent for personal injuries. The trial court granted Defendant's motion and dismissed Plaintiff's suit. The Court of Appeals affirmed, deferring to this Court any decision to abolish or modify the parental immunity doctrine.

Plaintiff points out that parental immunity in tort is of recent origin in American jurisprudence. American courts have long permitted actions between parent and child in disputes involving property rights. In 1891, parental immunity was, for the first time, judicially created by the Mississippi Supreme Court as an exception to general tort liability. *Hewlett v. George*, 68 Miss. 703, 9 So. 885 (1891). The *Hewlett* court cited no authority but relied exclusively on what it deemed to be necessary public policy. Tennessee was the second state to create parental immunity in 1903. In *McKelvey v. McKelvey, supra*, this Court quoted with approval from *Hewlett, supra*, the policy arguments as follows:

> So long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and of a sound public policy designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The State, through its criminal laws, will give the minor child protection from parental violence and wrongdoing, and this is all the child can be heard to demand. [9 So. at 887]

111 Tenn. at 390, 391, 77 S.W. 664.

In *McKelvey* suit was instituted by a minor child seeking to recover damages for cruel and inhuman treatment inflicted upon her by her father and stepmother. In dismissing the suit, the *McKelvey* court in dealing with parental immunity stated that: "[a]n analogy is furnished in the relation of husband and wife. It has been held that neither husband nor wife can maintain an action against the other for wrongs committed during converture." 111 Tenn. at 391, 77 S.W. 664. The court concluded that "there was no civil remedy either during or after coverture, because there was no civil right to be redressed." 111 Tenn. at 392, 393, 77 S.W. 664. The court affirmed the trial court's dismissal of suit based upon "a sound public policy." 111 Tenn. at 393, 77 S.W. 664. In light of the reliance in *McKelvey* upon the analogy between the relation of husband and wife and parent and child, we are unable to understand how the majority can say *McKelvey* has "continuing vitality" after this Court's total abolition of interspousal immunity in our recent opinion in *Davis v. Davis*, 657 S.W.2d 753 (Tenn.1983).

In *Davis v. Davis, supra*, we noted that "[t]he formalistic legal foundations that originally lent support to the doctrine of interspousal immunity have long ago crumbled away," and we held that the new justifications that emerged to nourish the rule were not valid reasons to retain interspousal immunity. These new justifications as outlined and discussed in *Davis, supra*, and *Luna v. Clayton*, 655 S.W.2d 893 (Tenn.1983) are that: "[a]bolition of interspousal tort immunity (1) would necessarily undermine and destroy marital harmony and tranquility, (2) could encourage fraud and collusion where a defendant is protected by insurance, (3) would overburden the judicial system with a multitude of trivial and frivolous lawsuits, and (4) would violate the principle of *stare decisis* and should await legislative sanction." *Luna v. Clayton*, 655 S.W.2d at 896; *Davis v. Davis*, 657 S.W.2d at 756, 757.

Plaintiff argues that the rationale traditionally advanced for retaining both paren-

---

1. *Stuber v. Louisville & Nashville R.R. Co.,* 113 Tenn. 305, 87 S.W. 411 (1904); *Jones v. Black,* 539 S.W.2d 123 (Tenn.1976).

tal and interspousal immunity is similar, if not identical, and that we should abolish parental immunity because the underlying basis for the doctrine no longer exists, and the doctrine serves only to deny legitimate claims of tort victims. The grounds most frequently advanced in support of parental immunity are: (1) it is necessary for the protection of family peace, domestic harmony and tranquility; (2) there is the danger of fraud and collusion between parent and child; (3) any change in the rule would interfere with parental care, discipline, and control; (4) depletion of family resources in favor of the injured child would occur at the expense of the other children in the family; and (5) any change would violate the principle of *stare decisis* and should await action by the Legislature.

Many of the above cited purported justifications were discussed at length in *Davis* and *Luna, supra,* and found to be insufficient to justify the continued application of the doctrine. In *Luna,* Chief Justice Fones, speaking for the Court, stated: "it is impossible for us in this case to see how denying Plaintiff access to the courts for the redress of a wrong suffered would encourage marital harmony where the marriage has ceased upon the death of a spouse." *Luna,* 655 S.W.2d at 896. In the case at bar, the parents are divorced and the parent-child relationship terminated upon the death of the child. The typical harmonious family unit which the doctrine was designed to protect no longer exists. This suit could not threaten family harmony.

The family harmony rationale has also been questioned when a child not related to a tortfeasor parent is injured in an automobile accident and is permitted to recover when an injured child of the tortfeasor in the same accident is precluded from bringing suit. Similarly, an emancipated 18-year-old living with his parents can maintain an action against his parents, when an unemancipated 17-year-old in the same household and involved in the same accident cannot. In Tennessee unemancipated brothers living in the same household with their parents can sue one another in tort.

*Herrell v. Haney,* 207 Tenn. 532, 341 S.W.2d 574 (1960). It is obvious from the above illustrations that parental immunity can produce manifest injustice in many factual situations. Often there is no good reason why an injured child should not enjoy the same right to protection and to legal redress that a minor friend or older brother enjoys. It is difficult to see how denying a child access to the courts aids family harmony. As the West Virginia Supreme Court held in *Lee v. Comer,* 159 W.Va. 585, 224 S.E.2d 721, 722 (1976), "to hold that a child's pains must be endured for the peace and welfare of the family is something of a mockery."

Plaintiff also argues that where liability insurance exists, the domestic tranquility argument is hollow for the Defendant parent has no financial stake in the suit, and more likely, the suit represents Defendant's only available method to provide compensation. It is also argued that the impact of a lawsuit on the family resources is diminished, if not completely eliminated, by the presence of insurance.

In *Luna v. Clayton, supra,* Chief Justice Fones found "[e]qually specious" the arguments in favor of invoking the doctrine to discourage fraud and collusion. In response to this purported justification the Court stated: "Our judicial system is not so ineffective that we must fear frivolous suits to deny relief to a plaintiff otherwise entitled simply because in some prospective application a litigant may be guilty of fraud or collusion. Built into the judicial process are numerous safeguards against fraudulent claims such as the deterrent of a perjury charge, modern discovery procedures, and the presentation of evidence to juries, all inherent in the Tennessee Rules of Civil Procedure and designed to eliminate surprise and uncover the truth by revealing all the relevant facts. These same factors also militate against claims that insurance companies may be disadvantaged tactically. Moreover, to the extent that insurance companies may fear collusive actions, they have the right to protect themselves by either restricting the scope

of their coverage or adjusting premiums accordingly. We, therefore, agree with the following observations recently made by the Supreme Court of Kansas:

"[T]he possibility of collusion exists to a certain extent in any case. Every day we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that courts are quite adequate for the task. In litigation between parent and child, judges and juries would naturally be mindful of the relationship and would even be more on the alert for improper conduct." *Nocktonick v. Nocktonick* [227 Kan. 758], 611 P.2d 135, 142 (Kan.1980)."

*Luna v. Clayton*, 655 S.W.2d at 896, 897.

Defendant contends, and a majority of this Court agrees, that if the parental immunity doctrine is no longer suited to the times, as Plaintiff argues, it should be dispensed with by legislation and not by judicial decree. In the *Davis* and *Luna* cases this Court addressed Defendant's contentions that *stare decisis* requires that prior decisions be honored and that any abolition or modification of interspousal immunity should await action by the Legislature. We responded in *Davis* by stating that:

our commitment to *stare decisis* remains strong. Confidence in our courts is to a great extent dependent on the uniformity and consistency engendered by allegiance to *stare decisis*. However, mindless obedience to this precept can confound the search for truth and foster an attitude of contempt.

657 S.W.2d at 758.

In *Luna* we stated that:

This Court recognizes that courts may have previously fashioned a rule of immunity from wrongdoing, having adopted a posture at an earlier date in response to what appeared to be desirable then as a matter of policy; yet when it later appears to be unsound within a given context, especially when the reasons upon which the immunity is based no longer exist, it remains within the domain of the judiciary to reject the applicability of such a rule.

655 S.W.2d at 897.

Justice Harbison in his dissenting opinions in *Davis* and *Luna* agreed "with the majority opinion that many of the reasons given to support marital immunity are superficial and not convincing." 657 S.W.2d at 759. However, he concluded that such a fundamental change in public policy should be made by the legislature. A statement from *Kilbourne v. Hanzelik*, 648 S.W.2d 932, 934 (Tenn.1983), cited in *Davis* by the majority is responsive:

Legislative action could, of course, be taken, but we abdicate our own function, in a field peculiarly non-statutory, when we refuse to consider an old and satisfactory court-made rule.

Since the doctrine of parental immunity was originally fashioned by this Court in 1903, we have the primary responsibility to restrict its application when it produces undesirable results.

Clearly this Court's resolution of the various policy arguments advanced in favor of interspousal immunity in the *Davis* and *Luna* cases applies with equal force to the same arguments which are relied upon by the Defendant in support of parental immunity in the case at bar. However, the Defendant also asserts in support of parental immunity the policy consideration that a parent has a privilege in caring for, disciplining and controlling his or her child. We agree with the Defendant and the majority opinion that there may well be factual circumstances in which a parent's privilege of caring for, disciplining and controlling his or her child is an important policy consideration in determining the applicability of the doctrine of parental immunity in a tort action. Comment *k* to § 895G of the Restatement (Second) of Torts adequately describes the importance of taking into consideration a parent's right to discipline and control his or her children in making a decision to modify or abrogate parental immunity:

With the abrogation of the general tort immunity between parent and child, the

courts soon discovered that there still remain difficult problems of determining when a physical harm should be regarded as actionable. Intentional infliction of physical harm might appear to be clearly tortious. But there is the privilege of parental discipline (See §§ 147–155). The intimacies of family life also involve intended physical contacts that would be actionable between strangers but may be commonplace and expected within the family. Family romping, even roughhouse play and momentary flares of temper not producing serious hurt, may be normal in many households, to the point that the privilege arising from consent becomes analogous.

The intimacies of family life also affect the determination of whether conduct is negligent or not. If the conduct giving rise to an injury does not grow directly out of the family relationship, the existence of negligence may be determined as if the parties were not related. A similar attitude is taken regarding the driving of an automobile on the street or highway; most of the cases abrogating the immunity have involved automobile accidents.

Conduct involving the exercise of parental authority or supervision is essential to the parent-child relationship. This is also true of the performance of parental duties such as the use of care to provide a safe place to live or adequate necessaries or proper instruction and training. Parental discretion is involved, and to say that the standard of a reasonable prudent parent is applied should be to recognize the existence of that discretion and thus to require that the conduct be palpably unreasonable in order to impose liability ...

Restatement (Second) of Torts, § 896G, comment *k* (1979) at 430–31.

Having determined that the sole policy consideration which supports parental immunity is a parent's privilege to care for, discipline and control his or her child, Justice Brock and I would then determine to what extent the rule should be modified. Other jurisdictions have dealt with parental immunity in many different ways which makes classification of these different rulings difficult.

Six states continue to uphold the doctrine and maintain an absolute ban on negligence suits. *Owens v. Auto Mutual Indemnity Co.*, 235 Ala. 9, 177 So. 133 (1937); *Horton v. Reaves*, 186 Colo. 149, 526 P.2d 304 (1974); *Coleman v. Coleman*, 157 Ga.App. 533, 278 S.E.2d 114 (1981); *Vaughan v. Vaughan*, 161 Ind.App. 497, 316 N.E.2d 455 (1974); *but see Buffalo v. Buffalo*, 441 N.E.2d 711 (Ind.App.1982) (non-custodial parent does not have immunity); *Shell Oil Co. v. Ryckman*, 43 Md.App. 1, 403 A.2d 379 (1979); *see also Kirtz v. Kirtz*, 52 Md.App. 136, 447 A.2d 492 (1982) (parent could not sue child); *McNeal v. Adm'r of Estate of McNeal*, 254 So.2d 521 (Miss. 1971). We would decline to follow these jurisdictions because the policy considerations which have been discussed above no longer justify an absolute application of the doctrine of parental immunity.

Seven states have abolished parental immunity without restriction. *Petersen v. City and County of Honolulu*, 51 Hawaii 484, 462 P.2d 1007 (1969); *Black v. Solmitz*, 409 A.2d 634 (Me.1979); *Rupert v. Stienne*, 90 Nev. 397, 528 P.2d 1013 (1974); *Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966); *Guess v. Gulf Insurance Co.*, 96 N.M. 27, 627 P.2d 869 (1981); *Miller v. Leljedal*, 71 Pa.Cmwlth. 372, 455 A.2d 256 (1983); *Elam v. Elam*, 275 S.C. 132, 268 S.E.2d 109 (1980).

Several states have recognized limited exceptions to the doctrine. *Attwood v. Estate of Attwood*, 276 Ark. 230, 633 S.W.2d 366 (1982) (allowing suit by child against parent's estate where injury caused by a willful tort, i.e., driving while intoxicated); *Ooms v. Ooms*, 164 Conn. 48, 316 A.2d 783, 785 (1972) (reaffirming parental immunity except where statutorily abolished in automobile accidents); *Hogan v. Hogan*, 106 Ill.App.3d 104, 61 Ill.Dec. 929, 435 N.E.2d 770 (1982) (immunity for conduct arising out of the family relationship and directly connected with family purposes and objectives); *Larson v. Buschkamp*, 105 Ill.

App.3d 965, 61 Ill.Dec. 732, 435 N.E.2d 221 (1982) (a defendant could pursue an action for contribution against father, driver of automobile which collided with defendant, under the Contribution Act); *Moon By Moon v. Thompson,* 127 Ill.App.3d 657, 82 Ill.Dec. 831, 469 N.E.2d 365 (1984) (parental tort immunity does not bar an action for contribution against the parents of an injured minor child, alleging negligent supervision); *Pullen v. Novak,* 169 Neb. 211, 99 N.W.2d 16 (1959) (immunity except where brutal, cruel or inhuman treatment); *Mahnke v. Moore,* 197 Md. 61, 77 A.2d 923 (1951) (malicious and wanton wrongs); *Felderhoff v. Felderhoff,* 473 S.W.2d 928 (Tex. 1971) (allowing suit for willful, malicious and intentional wrongs and for negligent acts in course of business activities). The Ohio Supreme Court has recently held that a parent is precluded from maintaining a negligence action against his unemancipated child, *Mauk v. Mauk,* 12 Ohio St.3d 156, 466 N.E.2d 166 (1984); however, they created an exception in *Dorsey v. State Farm Mut. Auto. Ins. Co.,* 9 Ohio St.3d 27, 457 N.E.2d 1169 (1984), by holding that the doctrine of parental immunity did not bar an action in negligence by a minor child against the estate of a deceased parent and the liability insurance company.

Some states, recognizing the effect of the presence of insurance on the validity of the doctrine, have allowed a child to recover damages from his parent for injuries sustained in automobile accidents only to the extent of the parent's automobile liability insurance coverage. *Williams v. Williams,* 369 A.2d 669 (Del.1976); *Ard v. Ard,* 414 So.2d 1066 (Fla.1982); *Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975); *Unah v. Martin,* 676 P.2d 1366 (Okla.1984); *Allstate Insurance Co. v. Wyoming Insurance Department,* 672 P.2d 810, 814 (Wyo.1983) (compulsory insurance statute overrules former holdings of court recognizing intra-family immunity to and including the minimum requirements of the financial responsibility law and the Unin-sured Motor Vehicles Act). We are of the opinion that the existence or non-existence of insurance cannot be the deciding factor in allowing a cause of action to be brought. As the Supreme Court of Oregon noted: "A person's liability in our law still remains the same whether or not he has liability insurance; properly, the provision and cost of such insurance varies with potential liability under the law, not the law with the cost of insurance." *Winn v. Gilroy,* 296 Or. 718, 681 P.2d 776 at 784, fn. 9 (1984).

Several states have limited the application of parental immunity where a defendant parent does not have legal custody of the child. *Buffalo v. Buffalo, supra; see Fugate v. Fugate,* 582 S.W.2d 663 (Mo. 1979). Louisiana, which has a statute granting parental immunity expressly, does not extend that immunity to a non-custodial parent. *See* La.Rev.Stat.Ann. § 9:571 (West, 1965).

Other courts have refused to make a distinction based upon custody, holding that the loss of legal custody does not deprive the parent of all of his or her parental rights, that, despite the loss of custody of the child, the parent still has a responsibility to provide for the child and, that there is a continued need for respect and the authority to discipline the child. *Coleman v. Coleman,* 157 Ga.App. 533, 278 S.E.2d 114 (1981); *Stevens v. Murphy,* 69 Wash.2d 939, 421 P.2d 668 (1966).[2]

The Defendant in this case has been termed a non-custodial parent. We believe that a distinction between custodial and noncustodial parents is highly artificial. While loss of legal custody may technically affect parental rights, it does not totally deprive a parent of his natural role as a parent barring some act indicating abandonment of his parental rights and duties. As stated in *Hartford Accident & Indemnity Co. v. Borchers,* 3 Ohio App.3d 452, 445 N.E.2d 1160, 1162 (1982), "[B]oth parents are parents even though the parties

**2.** *Merrick v. Sutterlin,* 93 Wash.2d 411, 610 P.2d 891 (1980), overrule "the portion of *Stevens* which upheld immunity in its broadest terms."

may have agreed or the court may have awarded custody to one of the parents." We would therefore refuse to make an exception to the doctrine of parental immunity based upon custody.

The California Supreme Court in *Gibson v. Gibson,* 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971), replaced parental immunity with the test of what an ordinarily reasonable and prudent parent would have done in similar circumstances.[3] The Minnesota Supreme Court adopted the California rule in *Anderson v. Stream,* 295 N.W.2d 595 (Minn.1980).

In a case of first impression the Idaho Supreme Court was "unwilling to adopt a categorical rule that universally prohibits parent-child actions on the basis of a total and absolute immunity," but it held no cause of action exists "for alleged negligent supervision." *Pedigo v. Rowley,* 101 Idaho 201, 610 P.2d 560, 564 (1980) (failure to supervise daughter who was floating on an air mattress on a lake and was struck by a speedboat).

One state, Missouri, follows a strict case-by-case analysis without an outright abrogation of immunity. *Kendall v. Sears, Roebuck and Co.,* 634 S.W.2d 176 (Mo. 1982). Apparently in Missouri whether a case is barred by parental immunity depends upon two questions: (1) would legal proceedings disrupt family harmony or subvert parental control and discipline and (2) was the minor emancipated? *Fugate v. Fugate, supra.*

Several state courts have followed the lead of the Wisconsin Supreme Court when in 1963 it abrogated parental immunity in negligence cases except in two situations: (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services and other care. *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193 (1963). *See Hebel v. Hebel,* 435 P.2d 8 (Alas.1967); *Schneider v. Coe,* 405 A.2d 682 (Del.1979); *Wagner v. Smith,* 340 N.W.2d 255 (Iowa 1983); *Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky.1971); *Horn v. Horn,* 630 S.W.2d 70 (Ky.1982); *Plumley v. Klein,* 388 Mich. 1, 199 N.W.2d 169 (1972); *Mayberry v. Pryor,* 134 Mich.App. 826, 352 N.W.2d 322 (1984).

The Oregon Supreme Court in *Winn v. Gilroy,* 681 P.2d at 783, adopted Restatement (Second) of Torts, § 895G, (1979) which rejects parental immunity. The Restatement provides:

§ 895G. Parent and Child.

(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.

(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious.

In *Winn* the Court noted that "the proper inquiry concerns the tortious or privileged nature of a parent's act that causes injury to the child, not a special parental immunity from a child's action for personal torts as distinct from other kinds of claims.... In some respects, the analysis in this Court is simpler than that found in the opinions of other courts that have re-examined the question of parental immunity. The Court has held that the presence or absence of liability insurance plays no role in deciding whether liability exists in the first place, nor do speculations whether one or another rule will burden the courts. Instead, we turn to the scope of parent's duties, discretion and privileges in relation to their children." 681 P.2d at 784.

Similarly, other courts have recognized that there is an important social policy in allowing a parent to control and discipline

---

**3.** Recently, the Idaho Supreme Court specifically "reject[ed] the California notion that all parent-child relationships may be judicially supervised by a 'reasonable parent' standard." *Pedigo v. Rowley,* 101 Idaho 201, 610 P.2d 560, 564 (1980).

his or her child. Accordingly, these courts have examined each parental immunity case on a case by case basis and have refused to apply the doctrine of parental immunity in cases in which the suit does "not undermine parental authority and discipline nor does it threaten to substitute judicial discretion for parental discretion in the care and rearing of small children." *Nocktonick v. Nocktonick, supra,* 611 P.2d at 142; *see also Merrick v. Sutterlin, supra.* As in the *Winn* decision, these courts refuse to apply a special immunity based solely on the parent-child relationship but rather focus on the parent's act that results in injury to a child. For example, these courts have held that allowing an action by a child against a parent for injuries sustained by the parent's negligent operation of an automobile does not violate policy considerations pertaining to a parent's right to discipline a child or to exercise discretion in the care and rearing of children. Accordingly, these courts have refused to apply the doctrine of parental immunity in cases involving the negligent operation of an automobile. *Id.*

In cases involving a parent's negligence in the operation of an automobile, there is a decided trend toward abrogating parental immunity. Twenty-one states have refused to apply the doctrine to automobile accidents. They have held that preserving domestic harmony and parental authority does not support barring such a suit. *Hebel v. Hebel,* 435 P.2d 8 (Alas.1967);

*Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282 (1970); *Turner v. Turner,* 304 N.W.2d 786 (Iowa 1981); *Nocktonick v. Nocktonick, supra; Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky.1971); *Plumley v. Klein,* 388 Mich. 1, 199 N.W.2d 169 (1972); *Silesky v. Kelman,* 281 Minn. 431, 161 N.W.2d 631 (1968); *Transamerica Insurance Co. v. Royle,* 656 P.2d 820 (Mont.1983); *Rupert v. Stienne,* 90 Nev. 397, 528 P.2d 1013 (1974); *Briere v. Briere,* 107 N.H. 432, 224 A.2d 588 (1966); *France v. A.P.A. Transport Corp.,* 56 N.J. 500, 267 A.2d 490 (1970); *Gelbman v. Gelbman,* 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969); *Carver v. Carver,* 55 N.C.App. 716, 286 S.E.2d 799 (1982); *Nuelle v. Wells,* 154 N.W.2d 364 (N.D.1967); *Winn v. Gilroy,* 296 Or. 718, 681 P.2d 776 (1984); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971); *Silva v. Silva,* 446 A.2d 1013 (R.I.1982); *Wood v. Wood,* 135 Vt. 119, 370 A.2d 191 (1977); *Smith v. Kauffman,* 212 Va. 181, 183 S.E.2d 190 (1971); *Merrick v. Sutterlin, supra.*

Two states have not even waited for a decision by the courts but have passed statutes specifically allowing suits in the case of automobile accidents. *See, e.g.,* Conn. Gen.Stat.Ann. § 52–572c (Supp.1984); N.C. Gen.Stat. § 1–539.21 (1983).[4]

In sum, we have found thirty-six jurisdictions which, under various classifications, have rejected the doctrine of parental immunity under factual circumstances like those in the present case.[5]

---

4. S.C.Code Ann. § 16–5–210 (Law Co-op 1976) which abolished parental immunity in motor vehicle accident cases was held unconstitutional in *Elam v. Elam,* 275 S.C. 132, 268 S.E.2d 109 (1980). In *Elam* the Supreme Court of South Carolina abrogated the doctrine of parental immunity in its entirety.

5. Alaska, *Hebel v. Hebel,* supra; Ariz., *Streenz v. Streenz,* supra; Calif., *Gibson v. Gibson,* supra; Conn., Conn.Gen.Stat.Ann. § 52–572c; Del., *Schneider v. Coe,* supra; Fla., *Ard v. Ard,* supra; Hawaii, *Petersen v. City and County of Honolulu,* supra; Ind., *Buffalo v. Buffalo* (non custodial parent), supra; Iowa, *Turner v. Turner,* supra; Kan., *Nocktonick v. Nocktonick,* supra; Ky., *Rigdon v. Rigdon,* supra; La., *Bondurant v. Bondurant,* (non custodial parent), supra; Maine,

*Black v. Solmitz,* supra; Mass., *Sorensen v. Sorensen,* supra; Mich., *Plumley v. Klein,* supra; Minn., *Anderson v. Stream,* supra; Mont., *Transamerican Ins. Co. v. Royle,* supra; Mo., *Fugate v. Fugate,* supra; Nev., *Rupert v. Stienne,* supra; N.H., *Briere v. Briere,* supra; N.J., *France v. A.P.A. Transport Corp.,* supra; N.M., *Guess v. Gulf Ins. Co.,* supra; N.Y., *Gelbman v. Gelbman,* supra; N.C., *Carver v. Carver,* supra; N.D., *Nuelle v. Wells,* supra; Okla., *Unah v. Martin,* supra; Ore., *Winn v. Gilroy,* supra; Pa., *Miller v. Leljedal,* supra; R.I., *Silva v. Silva,* supra; S.C., *Elam v. Elam,* supra; Vt., *Wood v. Wood,* supra; Va., *Smith v. Kauffman,* supra; Wash., *Merrick v. Sutterlin,* supra; W.Va., *Lee v. Comer,* supra; Wis., *Goller v. White,* supra; Wyo., *Allstate Ins. Co. v. Wyoming Ins. Dept.,* supra.

Nine jurisdictions would apparently apply the doctrine under similar factual circumstances.[6] Three jurisdictions have not ruled on the issue.[7] We are unable to determine how the courts of Ohio would rule on the facts presented in this case.[8]

The majority opinion is inconsistent with the trend in other jurisdictions to abrogate the doctrine of parental immunity or to apply it only in situations which support the sole policy consideration which justifies its application, a parent's right to discipline and use discretion in the care and rearing of children. As the Court in *Nocktonick*, 611 P.2d at 142, noted: "Allowance of such an action [for negligent operation of an automobile] does not undermine parental authority and discipline nor does it threaten to substitute judicial discretion for parental discretion in the care and rearing of children." See also *Winn v. Gilroy, supra.*

Justice Brock and I would hold that in an automobile tort action the doctrine of parental immunity does not apply in a suit between parent and child. We recognize that there may be fact situations in which parental exercise of discretion and authority should be provided special protection in a court of law. However, these considerations are not present in the case at bar. There is no policy consideration present in this case which justifies denying the Plaintiff an adjudication on the merits of her child's wrongful death claim.

I am authorized to state that Justice BROCK, author of our decision in *Davis*, concurs in this dissenting opinion.

**6.** Ala., *Owens v. Auto Mutual Indemnity Co.,* 235 Ala. 9, 177 So. 133 (1937); *see also Hill v. Giordano,* 447 So.2d 164 (Ala.1984); Ark., *Rambo v. Rambo,* 195 Ark. 832, 114 S.W.2d 468 (1938); *but see Attwood v. Estate of Attwood,* 276 Ark. 230, 633 S.W.2d 366 (1982) (immunity does not preclude suit for willful and wanton conduct); Colo., *Horton v. Reaves,* 186 Colo. 149, 526 P.2d 304 (1974); Ga., *Coleman v. Coleman,* 157 Ga. App. 533, 278 S.E.2d 114 (1981); Ill., *Wilkosz v. Wilkosz,* 124 Ill.App.3d 904, 80 Ill.Dec. 249, 464 N.E.2d 1232 (1984) (transporting child from school is not within the "beyond the family purpose" exception to the doctrine of parental immunity); *see also Hogan v. Hogan,* 106 Ill. App.3d 104, 61 Ill.Dec. 929, 435 N.E.2d 770 (1982); Md., *Shell Oil Co. v. Ryckman,* 43 Md. App. 1, 403 A.2d 379 (1979); Miss., *McNeal v. Administrator of Estate of McNeal,* 254 So.2d 521 (Miss.1971); Neb., *Pullen v. Novak,* 169 Neb. 211, 99 N.W.2d 16 (1959) (immunity bars suit except where there exists brutal, cruel or inhuman treatment); Tex., *Felderhoff v. Felderhoff,* 473 S.W.2d 928 (Tex.1971) (immunity bars suit for ordinary negligence involving exercise of parental discretion or authority with respect to provisions of necessities and care for child).

**7.** Utah and South Dakota have not addressed the issue of parental immunity. In *Pedigo v. Rowley,* 101 Idaho 201, 610 P.2d 560 (1980), the Idaho Supreme Court applied the doctrine of parental immunity to a suit for negligent parental supervision. No Idaho cases address the type of ordinary negligence involved in the case at bar.

**8.** *Compare Karam v. Allstate Ins. Co.,* 70 Ohio St.2d 227, 436 N.E.2d 1014 (1982) (immunity arising from the parent-child relationship shall be recognized even though the alleged negligent parent is deceased); *Dorsey v. State Farm Mutual Auto. Ins. Co.,* 9 Ohio St.3d 27, 457 N.E.2d 1169 (1984) (doctrine of parental immunity does not bar action in negligence brought against estate of deceased parent and liability insurance company by minor children); and *Mauk v. Mauk, supra* (unemancipated minor child may not be held liable to the parent for injuries in automobile accident caused by the negligence of the child). The facts of *Dorsey, supra,* resemble those in the case at bar, but the Ohio Supreme Court's decision in *Mauk, supra,* casts doubt as to the breadth of the exception recognized in Dorsey.